**ZEFF v. SANFORD, Warden.**
**No. 1502.**

District Court, N. D. Georgia, Atlanta Division.

Feb. 26, 1940.

Hal Lindsay and Morris Brandon, Jr., both of Atlanta, Ga., for petitioner.

Harvey H. Tisinger, Asst. U. S. Atty., of Atlanta, Ga., for respondent.

UNDERWOOD, District Judge.

The above case came on for final hearing on February 20, 1940, after delays due to requests for continuances to amend and to take testimony, and for a rehearing, all of which were granted.

Petitioner plead guilty to an indictment in two counts, the first charging the unlawful shipment of obscene literature in interstate commerce, and the second charging that petitioner unlawfully caused to be delivered by the United States Mails a letter which was, under the law, non-mailable matter.

In his petition for a writ of habeas corpus, petitioner contends, first, that he was denied assistance of counsel; second, that the second count is void because it does not charge a Federal offense; and third, that the sentence imposed is illegal and void, because the judgment of the Court was arrived at in the absence of petitioner in a hearing at which the prosecuting attorney was present and presented his views, and was imposed in Chambers and not in open court.

It appears not only from the testimony of petitioner, but also from that of the United States Attorney and his Assistant who prosecuted the indictment in question, that petitioner's allegations with respect to the consideration and tentative determination of his sentence out of his presence are true.

It appears from such testimony that the District Judge had adopted the practice of holding what was termed a "Pre-Sentence Hearing" in cases in which he had been advised that the defendants were going to plead guilty.

In conformity with this practice, the following procedure was had in the instant case. Petitioner went into the office of the United States Attorney and indicated he wanted to plead guilty and asked Mr. McGuire, the Assistant United States Attorney, if the Judge would take his plea at that time. Mr. McGuire told the Judge that petitioner had come from Cincinnati and wished to plead guilty. The Judge replied, "I will take his plea but I want to go over this matter." Then there was held, in the absence of petitioner, what the Government Attorneys termed a "Pre-Sentence Hearing," at which time the Judge discussed the case with them and the Probation Officer, examined the obscene literature and tentatively determined the sentence to be imposed. During this hearing the Judge asked Mr. McGuire to inform him what the maximum penalty was and he was told that it was five years on each count. Thereupon the Judge stated, "This man being the originator of this and being responsible for these other two parties being in the penitentiary I think * * * I will give him ten years."

After this hearing, petitioner was called into the Judge's Chambers and was there arraigned and sentenced. Neither the arraignment nor the sentence took place in open court.

Petitioner, upon appearing before the Court, admitted he had committed the of-

fenses and plead guilty. The Court then said, "I will give you two five-year sentences concurrently." The United States Attorney spoke up and said, "Do you mean concurrently or consecutively?" The Judge replied, "I mean consecutively." The United States Attorney testified that he asked the Court this question because the Judge had told Mr. McGuire at the Pre-Sentence Hearing that he was going to give petitioner a ten-year sentence.

There is no dispute as to the above facts and, therefore, the question presented is, whether or not the so-called "pre-sentence hearing" by the Judge in the absence of petitioner and before his arraignment and plea of guilty but in the presence of the Probation Officer and the prosecuting attorneys, and the imposition of the sentence in Chambers without advising petitioner of such proceeding and of his rights to assistance of counsel, invalidated the sentence that was imposed.

There is no evidence or claim that the Judge or prosecuting attorneys acted from any wrong motive, but on the contrary, it appears that the Judge, who had already been advised of petitioner's desire to plead guilty, was trying to ascertain all the facts available concerning petitioner and his crime, in order that a just sentence might be imposed. Furthermore, petitioner had previously voluntarily disclosed to Mr. McGuire his previous convictions and all the facts concerning the crime he was charged with in the indictment and had discussed with him the probable length of sentence he would receive. The fact that two other perpetrators of offenses connected with those committed by petitioner were given eight-year sentences, was known to petitioner, and this fact and the fact that he, as the originator of the crime, would probably receive a longer sentence, were discussed by petitioner and Mr. McGuire before the pre-sentence hearing.

The complaint filed against petitioner before the United States Commissioner was in only one count and petitioner never saw the indictment until a copy was handed him about a half an hour before he went before the Judge. He contends that he did not know there were two counts in the indictment and that he only intended to plead guilty on the first count, which contained the sole charge made against him before the Commissioner. He went before the Judge in Chambers, alone, without a lawyer or friends and not even his bonds-

man stayed to hear the plea and sentence. At the time of arraignment and sentence, neither the Judge nor any one else advised him that a lawyer could be appointed to represent him without expense to himself. Petitioner contends he did not know of this right and would have asked for an attorney if he had. Previously he had stated to his bondsman that he did want a lawyer, not to contest his case, but to represent him at the time he entered his plea of guilty and to plead for the mercy of the Court. The bondsman made some inquiries for him and brought one lawyer to the jail to see him, but because he did not have money to pay a fee and thought that he should not place this additional burden upon his indigent dependants, and not knowing that the Court would appoint a lawyer to serve without compensation, he entered his plea without the assistance of counsel.

If an accused, with knowledge of his rights and pertinent facts, admits his guilt and states to the Court that he does not desire counsel but wishes to plead guilty and place himself upon the mercy of the Court, and does so, such act is a competent and intelligent waiver of his right to assistance of counsel. Erwin v. Sanford, D.C., 27 F.Supp. 892.

But if a Court, before conviction or the entry of a plea of guilty, hears, in private and in the absence of the accused and without his knowledge or consent, a presentation of the case by the prosecuting attorney and others, and determines, in such hearing, upon the sentence to be imposed, and thereafter, without advising the accused of such hearing and what took place therein and of his right to assistance of counsel, imposes, in chambers and not in open court, the sentence previously decided upon, then the entry of a plea of guilty in these circumstances and in ignorance of his right to assistance of counsel would not amount to an intelligent and competent waiver of counsel and the sentence imposed, in the absence of express waiver, would be void. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

An accused could hardly be presumed, in such circumstances, to have waived assistance of counsel or to entertain a desire to place himself upon the mercy of the Court, when the Court had already, without his knowledge, previously determined, without hearing him, to give him the maximum sentence that could be imposed under the law.

The situation with respect to securing information to enable the Judge to wisely and justly impose sentence, procured after conviction or the entry of a plea of guilty, is quite different. In such case, under the technique of modern penology, the accused, who is supposedly entering his plea of guilty in open court or standing in open court before the Judge after verdict, is told that his case is to be investigated before imposition of sentence and he, unless he objects, impliedly consents to such investigation. It seems, therefore, perfectly proper for a thorough investigation to be made, after conviction or plea of guilty, of the accused's reputation, past offenses, economic, social and educational background, and of all other matters which a Judge should have before him in determining the kind of sentence which should be imposed. Even in such cases, however, any information not received from the accused himself or not given in his presence, which might influence the judgment, should be called to his attention, without necessarily disclosing the sources of such information, so that he may be afforded an opportunity to object to its use and to rebut same. Even after conviction or plea of guilty, great care should be exercised to see that the accused understands what is taking place and has, before sentence is imposed, a fair and full opportunity to answer charges made against him.

If progress is to be made in the administration of criminal law and offenders treated in a scientific manner, such latitude must be left to the Judge unless blind and irresponsible judgments are to be imposed. Pre-sentence investigation, after conviction or plea of guilty, is the most just, effective and humane method, if properly used, of arriving at a sentence which will protect both society and the accused.

Such a situation, however, is very different from one where the accused, with right to assistance of counsel and to arraignment, trial and sentence in open court, is permitted to enter a plea of guilty in ignorance of his right to assistance of counsel and the fact that his sentence has been predetermined without hearing from him, although the purpose of the Judge be highly praiseworthy and adopted from the best motives.

The sentence in this case, imposed in the circumstances above stated, is, in my opinion void because petitioner was not

provided with counsel and did not waive his right to same.

If this finding is correct, there is no need to consider petitioner's claim that the second count does not charge a Federal offense and is void. If the finding is incorrect and the sentence on the first count is valid, then consideration of the validity of the second count and sentence imposed thereon would be premature. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238.

Whereupon, it is considered, ordered and adjudged that the writ of habeas corpus be, and the same hereby is sustained, and that respondent discharge petitioner from custody at the end of fifteen (15) days from this date, unless a further supersedeas be granted by this Court, such delay being allowed to afford opportunity for appeal if desired, or, in order to enable the Court that imposed the sentence to reassume jurisdiction of petitioner and to take such further steps in the case as the law may permit.