79 N.J. Super. 479 (1963)
192 A.2d 161
STATE OF NEW JERSEY, RESPONDENT,
v.
BENEDICT LECKIS, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Considered June 10, 1963.
Decided June 10, 1963.
*480 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Benedict Leckis, appellant, pro se.
Mr. Clyde C. Jefferson, County Prosecutor, for respondent.
PER CURIAM.
Defendant appeals the County Court's denial of his application for a writ of habeas corpus. Our analysis of his pro se brief indicates that he relies upon the following grounds: (1) he was not represented by counsel, nor informed by the court of his right to counsel; (2) he was not explicitly and definitively informed of the serious nature of the crime charged (atrocious assault and battery); (3) sentence was imposed without the benefit of a presentence investigation and report, as required by R.R. 3:7-10(b); (4) the proceedings resulting in his conviction were characterized by unwarranted *481 haste, passion and prejudice, and finally, (5) the 6 1/2-7-year State Prison sentence imposed was excessive.
On June 22, 1961 defendant was arrested on the complaint of a state trooper charging him with atrocious assault and battery upon his father, John Leckis. After arraignment before the local magistrate, he was lodged in the county jail. While in jail he executed Criminal Form 13A, "Statement of Defendant." The signature to the statement is admittedly defendant's, but the answers to the several questions in the form are in another handwriting, apparently that of the county detective who witnessed the statement. The answers indicate that defendant was unable to afford the services of an attorney but was aware of his right to have the court assign one to represent him. The answer to the question whether defendant wanted the court to assign such an attorney was "No." Defendant answered "Yes" to the questions inquiring whether he had voluntarily signed a waiver of indictment and trial by jury, and also whether he understood the nature of the offense charged, stated as "A.A. & Battery." The answer to the question whether any promises had been made as to the sentence he would receive was "No." Finally, as to how defendant intended to plead, the answer was "Guilty."
On June 26 defendant also signed a waiver of indictment and trial by jury (Criminal Form 6) wherein it was stated he was charged with atrocious assault and battery in violation of N.J.S. 2A:90-1, the waiver being witnessed by the same county detective.
Thereafter, on June 30, an accusation was brought against defendant (Criminal Form 13) alleging that on June 22 he "did commit an atrocious assault and battery upon John Leckis, by atrociously striking, beating, lacerating and wounding him," in violation of N.J.S. 2A:90-1. On the same day defendant was brought before the County Court judge for plea and sentence. In the meantime, the county probation department had on June 29 prepared a "Social Investigation" report, apparently in light of defendant's execution of Criminal Form 13A and the waiver of indictment and trial by jury.
*482 What happened when defendant appeared for plea and sentence is illuminating. The prosecutor read the accusation in full. The judge, addressing defendant, then asked, "Mr. Leckis, you have decided, as I understand it now, that you do not want an attorney to represent you; is that correct?" and defendant answered, "Exactly." The following colloquy ensued:
"THE COURT: Do you understand the charge which the Prosecutor has read to you, of atrocious assault and battery upon your father, John Leckis? Do you understand the charge?
THE DEFENDANT: I don't know what the charge would be, sir.
THE COURT: Well, do you want to read that part again? It is perfectly plain.
[PROSECUTOR]: Did commit an atrocious assault and battery upon John Leckis, by atrociously striking, beating and lacerating and wounding him.
THE DEFENDANT: No, sir.
THE COURT: What you now say is `No, sir?'
THE DEFENDANT: I did not strike him.
THE COURT: You didn't touch him at all?
THE DEFENDANT: I pushed him.
THE COURT: Do you plead guilty or not guilty?
THE DEFENDANT: Yes, sir.
THE COURT: Which?
THE DEFENDANT: I plead guilty."
The prosecutor stated that he was not sure the court should accept the plea "if there is any doubt in this man's mind that the man he struck was his father."
At this point the judge asked defendant how far he had gotten in school, and the reply was eighth grade. The judge then said:
"THE COURT: Do you understand now what the Prosecutor has read? You are charged with striking your father, hitting him. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: Do you plead guilty or not guilty?
THE DEFENDANT: Guilty.
THE COURT: The plea of guilty may be entered. Is there anything you would like to say to the Court before sentence is passed?
THE DEFENDANT: Could I explain what happened?
THE COURT: Say whatever you please, sir."
*483 Defendant then explained that it was raining on the day in question and that after lunch he wanted to do some work inside the house  scraping the walls and painting. His father told him not to. Defendant had a few beers during the afternoon, and when evening came he asked his mother where the cans of beer were that he had in the icebox. She did not reply and he began to argue with her. Defendant continued:
"* * * My dad jumped in. And when he jumped in, I wanted to push him away. He bit me on the finger here and bit me on my muscle here. And I pushed him, which he fell and he hit the buffet. So I tried to pull him out from underneath the buffet, pick him up, and he bit me on the other arm. I still have the marks. And then, I don't know if he wanted to hit me with something or what.
THE COURT: Why don't you know?
THE DEFENDANT: Because my back was turned. He grabbed me.
THE COURT: He was biting you, but your back was turned; is that right?
THE DEFENDANT: That is right. As he was biting me, I pushed him again and he fell. So, I don't know if he wanted to hit me with something, but I know I got four stitches in the head. That is all I know.
THE COURT: That is it?
THE DEFENDANT: Well, I tried to get away from him. I didn't want to hit him. He kept coming after me."
Following this explanation the court asked defendant if he hadn't been sentenced to ten days in county jail for disorderly conduct on October 17, 1960, and to 30 days for disorderly conduct on December 15, 1960. When defendant admitted this was so the judge inquired, "Did your father bite you on those occasions, or your mother, or somebody?" and again, "Stayed in out of the rain on those occasions, I suppose?" The judge then observed that the information contained in the presentence report was "completely different * * *. You fight too much. On this occasion, there is no question in the world that you struck your own mother and beat your father so that he went to the Medical Center." He then imposed the State Prison sentence of 6 1/2-7 years.
N.J.S. 2A:90-1 provides that "Any person who commits an atrocious assault and battery by maiming or wounding another *484 is guilty of a high misdemeanor." High misdemeanors are punishable by a fine of not more than $2,000 or by imprisonment for not more than seven years, or both. N.J.S. 2A:85-6.
Atrocious assault and battery was defined in State v. Capawanna, 118 N.J.L. 429, 432 (Sup. Ct. 1937), affirmed per curiam 119 N.J.L. 337 (E. & A. 1938), as "an assault and battery that is savagely brutal or outrageously or inhumanly cruel or violent." In State v. Maier, 13 N.J. 235, 240 (1953), the late Chief Justice Vanderbilt stated that N.J.S. 2A:90-1 could be distinguished from other statutes pertaining to aggravated assault and battery because it penalizes the "vicious act" of the defendant rather than his evil purpose. See also State v. Riley, 28 N.J. 188, 197 et seq. (1958), and State v. Edwards, 28 N.J. 292, 296-7 (1958).
As we read the record of what transpired when defendant appeared before the county judge on June 30, we are of the opinion that the serious nature of the crime charged was never explicitly and understandably explained to him. As can be seen from the record quoted above, his first answer after the charge had been read to him was, "I don't know what the charge would be, sir." And when the prosecutor, on the court's instruction, read the charge in its essential part, defendant's comment was, "No, sir." He explained this in his next answers when he said, "I did not strike him," and "I pushed him." There followed the plea of guilty. When the prosecutor expressed some doubt as to whether the judge should accept the plea, the judge asked defendant if he understood what the prosecutor had read: "You are charged with striking your father, hitting him. Do you understand that?" The answer was "Yes," and the plea guilty. The county judge's last remark certainly did not enlighten defendant as to the true nature of the charge. There was nothing to inform him that he was pleading guilty to an atrocious assault and battery  one which amounted to a "vicious act," or, in the expanded definition of the crime, that what he had done was "savagely brutal or outrageously or inhumanly cruel or violent." *485 State v. Capawanna, above, quoted with approval in State v. Riley, above, 28 N.J. 188, 197, affirming in part 49 N.J. Super. 570 (App. Div. 1958), certiorari denied 361 U.S. 879, 80 S.Ct. 166, 4 L.Ed.2d 117 (1959). Indeed, defendant clearly indicated that all he had done was to push his father. He amplified this when, permitted to explain what had happened, he said he had pushed his father, with the result that he fell and hit the buffet. Further, his father bit him on the finger and on the muscle, and when defendant tried to pick him up, he bit defendant on the other arm. Defendant also informed the judge that he had been hit because he had four stitches in the head.
Considering all this, it cannot realistically be said that defendant, with full understanding of the charge, pleaded guilty to atrocious assault and battery.
Defendant's claim that he was not informed of his right to counsel is not supported in the record. However, his assertion that sentence was imposed without the benefit of a presentence report requires some comment. If, by this, he means no more than that the trial judge did not have any probation department report before him at the time of sentence, then defendant is quite mistaken. There was a report, and it must have been prepared in some haste because defendant executed Criminal Form 13A and the waiver on June 26 and the report is dated June 29.
R.R. 3:7-10(b), which requires the probation service of the court to make a presentence investigation and report before the imposition of sentence or the granting of probation, has been denoted "a mandate of the highest order," serving an important social purpose. State v. Culver, 40 N.J. Super. 427, 431-432 (App. Div. 1956), affirmed 23 N.J. 495 (1957), certiorari denied 354 U.S. 925, 77 S.Ct. 1387, 1 L.Ed.2d 1441 (1957). And State v. Pohlabel, 61 N.J. Super. 242 (App. Div. 1960), points up the importance of the correctness of the information contained in a presentence investigation report.
*486 The report which was before the sentencing judge on June 30 falls far short of what a presentence report should be. It does not even qualify as a complete and definitive "Social Investigation" (so captioned). It first gives defendant's name, address, age (48) and birthday. The offense is then described as "Assault and Battery." Under "Previous Offenses" there is an entry of a nonsupport charge in another county in 1948, although there is nothing to show that defendant has ever been married or fathered a child. Completely uninformative is a notation that defendant was committed to the New Jersey State Hospital in 1948. The reason for the commitment is not stated, nor does the report indicate when defendant was discharged or his mental condition then or now. Under "Previous Offenses" there are also notations of disorderly conduct charges brought on October 8 and December 11, 1960, respectively resulting in 10-day and 30-day county jail sentences.
The major part of the report is devoted to the "Details of Offense." It is fairly obvious that these "details" were obtained from the prosecutor's file. There would be nothing essentially wrong with this were the source of the information given and, at the same time, defendant's version of what occurred laid before the judge. Preparation of a good presentence report requires that the probation department interview the accused as well as the accusers, summarizing their respective versions of the affair. The statement of witnesses is equally important, as is that of the official investigation. We find strong indications in the record suggesting that if defendant had been fairly interviewed by a probation department representative in whom he had some confidence, and the entire background of the occurrence disclosed, the degree of his offense might well have been tempered and his punishment proportionately lightened.
The rest of the report consists of a repetition of defendant's previous record, a very brief family history limited to the names, ages, religion and residence of his father, mother and sister, his claim that he was never married, the fact that defendant *487 attended school only through eighth grade, his employment record, army service record, religion and a notation that in his leisure time he admits to drinking too much. There is little in the report that would give a judge an accurate idea of defendant's personal background  his mentality, personality, habits and the like  or of the family background which would give the case a meaningful setting.
So much depends upon the completeness and balanced presentation of a presentence report that anything less would fall short of providing the sentencing judge with the information he must have in order to impose a just sentence.
The concluding remarks of the trial judge before he imposed sentence go beyond the information contained in the presentence report and reflect what appears to be a personal familiarity with the incident and those who figured in it. The judge said, "You have been a nuisance for years. You drink too much. You fight too much." In passing sentence a judge should limit himself to what he has learned in the course of the trial or hearing before him, and the information officially and reliably recorded in the presentence report.
Defendant here received what amounts to the maximum sentence, for the minimum was fixed at 6 1/2 years and the maximum at 7, set by N.J.S. 2A:85-6. Justice can best he served in this case by reversing and remanding the entire matter to the County Court.
Counsel should be assigned to consult and advise with defendant so that he may be fully informed of the exact nature of the crime charged and of his rights. He may then elect to plead guilty to the accusation, or not guilty and stand trial.
Reversed and remanded.