Richard **HICKLIN**, Appellant
(Defendant below),

v.

The **STATE** of Wyoming, Appellee
(Plaintiff below).

No. 4399.

Supreme Court of Wyoming.

May 6, 1975.

**744**

W. A. Smith, Lander, for appellant.

David B. Kennedy, Atty. Gen., and Thomas A. Jones, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and Mc-CLINTOCK and RAPER, JJ.

RAPER, Justice.

The court is asked in this appeal to review, set aside the sentence and terms of probation imposed upon the defendant-appellant and permit him to withdraw his plea of nolo contendere.

The defendant's immediate troubles began when, after earlier indulging in the consumption of intoxicating liquor, he went to the Valley View Lounge and purchased a drink at a time when the bar was not open to the public. He became insulting, belligerent and threatening with the lady bartender and complainant, pulled out a pocket knife and threatened to cut off her head. She became frightened, threw Purex in his face and was then able to momentarily escape by jumping over the bar. His uncle came in and talked him away.

Following that episode the defendant returned to his farm, broke up some things in the house, and killed the family Siamese cat by kicking or throwing it. Shortly thereafter, two sheriff's deputies showed up, apparently upon the complaint of Ellen Thompson that she had been assaulted with a knife.

Upon arriving, the deputies went to the door and knocked, where they were met by the defendant with a high-powered rifle. He pointed it at them and they were ordered off the property. They backed away with him waving the rifle first at one and then the other. They hustled into their vehicle and started to move out. While that was transpiring, a highway patrolman showed up on the scene. He was behind his patrol car with pistol drawn but afraid to shoot for fear the two deputies might get shot. The deputies once inside their automobile, radioed the highway patrolman to pull back; he did so and the defendant fired in front of the patrolman's vehicle, the bullet striking the ground a

few feet away. There was another shot by defendant but where it went could not be ascertained.

The officers pulled away to a point a couple of hundred yards distant and watched the defendant. More help was called and during that time Mr. Hicklin obtained a horse, rode it around in the area, from time to time dismounting and pointing his rifle at the officers. As he moved closer, they would back up trying to stay out of rifle range. No more shots were fired during this extravaganza and apparently Hicklin, when completely surrounded by other arriving law enforcement personnel, put his rifle down and submitted himself to arrest.

As a result of all this conduct on the part of the defendant, as reconstructed from the record, and following necessary preliminary proceedings, two informations were filed in the district court, one charging him with the assault on the lady bartender and one of three counts arising out of the initial confrontation and shooting with the law enforcement officers, as violations of § 6–70(B), W.S.1957, 1973 Cum. Supp.[1]

At the arraignment proceedings, with retained counsel present, after being fully advised of his constitutional rights, the defendant, through his attorney, entered a plea of not guilty, not guilty by reason of insanity at the time of the commission of the crime and not triable by reason of insanity since the commission of the crime. Pursuant to § 7–241, W.S.1957, 1973 Cum. Supp., as a result of the pleas entered at this time, the defendant was committed to the Wyoming State Hospital at Evanston for observation and report back to the court by the staff and by such doctors and psychiatrists as the State of Wyoming might employ or as the defendant himself might employ.

The staff of the Wyoming State Hospital responded that at the time of the offenses and on a previous· occasion in 1971, the defendant, following the ingestion of alcohol, underwent an acute change in personality and behavior, characterized by paranoid thinking, irrationality, impaired control of aggressive impulses, suicidal and homicidal threats, loss of social judgment, partial amnesia, and fragmentation of normal behavior patterns. This condition is medically classified as pathologic intoxication. It was not the opinion of the staff of the Wyoming State Hospital that he was suffering from such a defective reason as to cause him to lack substantial capacity to understand the nature and quality of his actions or to differentiate between right and wrong; he was then presently capable of understanding the proceedings against him, his relation to them and had an ability to cooperate with his defense. The diagnosis was periodic excessive drinking, pathologic intoxication (acute brain syndrome manifested by psychosis), now recovered.

The recommendations were that:

"(1) The interests of society as well as this man and his family, would not seem to be served by his being incarcerated.

"(2) It is imperative that this defendant remain totally abstinent from alcohol as a condition of being a free agent.

"(3) There are drugs which are of value in prevention of alcohol use by virtue of their causing the subject to develop an acute, physically distressing illness (acetaldehyde syndrome) after ingestion of even small amounts of alcohol. The best known of these agents is disulfuram ('Antabuse'); another is citrated calcium carbamide (Temposil)."

1. "Whoever, while armed with a dangerous or deadly weapon, maliciously perpetrates an assault or an assault and battery upon any human being, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both."

It was further recommended that the medication be administered for a period of at least one year under a physician's supervision and that the medication be given to him daily by his wife or other reliable person and that complete alcohol abstinence be conditions of suspended sentence or probation.

After the report of the staff of the state hospital was given, the defendant decided to change his plea to nolo contendere to the count of assaulting the lady bartender with a knife. The State decided that if he was willing to do that, it would dismiss the other information containing three additional counts of assault. At a proceeding held to consummate those decisions, the trial judge reviewed at length the defendant's right to a jury trial and all his other constitutional safeguards. It was explained that his plea of nolo contendere would be considered as a plea of guilty and, if made, the court would deal with the defendant in precisely the same way as if it were a plea of guilty. The court likewise made it clear that it had not been a party to any plea bargaining between the defendant's attorney, the prosecutor or the sheriff or anybody else regarding the disposition of the case. The defendant was in no way enticed to change his plea. A presentence investigation and report was thereupon ordered by the court and received; it recommended probation with complete abstinence from alcohol.

On the day set for sentencing, and upon the court being convened, the trial judge announced that in addition to having considered the presentence investigative report, he had talked with the undersheriff for Fremont County with respect to an incident that had occurred two or three years previously when the defendant had been drunk and gotten into a squabble with his wife. After Hicklin on an extension telephone heard her calling the undersheriff, he went outside, pulled a tractor across the road to barricade admittance and went back into the house where, after further bickering with his wife and threats, more or less required her to shoot him in self defense. The defendant recovered from that occurrence and lived with his wife ever since.

At the sentencing hearing, there were present the victim of the knife assault and all those officers involved in the shooting fracas that took place at the defendant's farm, resulting in the charges against the defendant for the additional three incidents of assault with a dangerous weapon; all testified. The defendant's counsel was permitted cross-examination and, after hearing all of that evidence, the defendant's counsel at the close of the evidence presented the testimony of defendant's wife to tell of family background and her willingness to forgive and assist her husband. She, on cross-examination by the state prosecutor, developed more details of defendant's behavior when she felt compelled to shoot him. On that occasion, he was drunk, rolled her out of bed and threatened to stomp her; she ran to the barn to call the sheriff and then returned to the house. The defendant pulled down a pole lamp, hit her across the legs, threatened to kill her, she panicked, ran out of the house again and it was then she got the .22 rifle. He moved to take it from her, saying, "I guess I will take that gun away from you and use it on you." She let him have a .22 slug in the belly. At the close of Mrs. Hicklin's testimony, defendant's counsel said they had nothing further by way of evidence to offer and declared, "We have no way to contradict it," and argued for leniency. The defendant was offered an opportunity to personally speak on his own behalf but he declined.

After a long, detailed discussion of why he was doing what he did, the trial judge fined the defendant $500.00, sentenced him to the Wyoming State Penitentiary for a term of not less than three years nor more than six years and, then, without suspending the $500.00 fine, did suspend the penitentiary sentence and place the defendant on probation on the following terms:

"1. That you will immediately be delivered to the custody of the Sheriff of Fremont County, Wyoming, and

will serve a period of one month in the Fremont County jail, all in solitary confinement, to give the Court an opportunity to have further examinations conducted and for further consultations between you and psychiatrists.

"2. That you accept counseling from Fremont Counseling Service while you are in such confinement, and that you be examined by Dr. Doidge, of Lander, Wyoming, and by Dr. Henry of the University of Utah, for their further reports.

"3. That while you are in such confinement and after you are released from such confinement, that you accept and undertake such additional counseling as may be recommended by the Fremont Counseling Service, and including such psychiatric consultations and treatment as the Fremont Counseling Service may prescribe, and, further, that you go on such medical treatment as the doctors may recommend, and continue on that treatment for such period of time as they may recommend.

"4. That you post bond in the State of Wyoming in the sum of $50,000.00, to be secured with sufficient collateral or by other sufficient securities to be approved by the Court, such bond to be forfeited if the terms of this probation are violated, particularly with reference to drinking any intoxicants and with reference to causing threats of violence to any other person.

"5. That you do not drink any intoxicants whatsoever; that you do not use any drugs at any time, except those which are prescribed by a physician upon a current prescription.

"6. That you not have, or operate, or permit, any firearms or unnecessary knives, or any weapons, to be about the house or place where you work or reside, and no dangerous weap- ons, excepting only necessary farm implements, but in all events, no firearms whatever.

"7. That you neither threaten nor attempt physical bodily harm on any person whatsoever.

"8. That you will report to the Court, twice in each year, at or about Term Day as ordered by the Court, and at such other times as shall be directed by the Court from time to time, and to the probation officer assigned to you, and in this regard, the Court may transfer the supervision to Laramie County so it won't be necessary for you to return to Fremont County twice a year to accomplish the reports.

"9. That you sign an acceptance of this probation, and of its terms hereof, and agree to abide by the terms and conditions hereof.

"10. That you will abide by the reasonable rules and directions of the State Department of Probation and Parole.

"11. That you conduct yourself while at large in a law abiding manner; that you keep a probation officer and the department advised of your whereabouts and your conduct; there will be no restriction against leaving the State of Wyoming and you may leave the State of Wyoming from time to time without getting special permission to do so.

"12. IT IS FURTHER ORDERED, CONSIDERED, ADJUDGED AND DECREED that the term of this probation shall continue for so long as the Court has authority to continue said probation, and the Court perceives that to be a combination of the maximum sentence available to the Court plus five years, which makes a total term of 19 years probation. The term of this probation shall continue for so long as the Court has authority to continue it."

While it did not appear necessary to do so under the Wyoming Rules of Criminal Procedure,[2] the trial judge nevertheless advised the defendant that he had a right of appeal from the sentence and if he did not have funds to do so, the appeal could be taken in forma pauperis.

At this point the defendant became displeased with his counsel and engaged the services of another attorney, the one now representing him on this appeal. His new counsel thereupon filed a motion to withdraw the defendant's plea of nolo contendere and a hearing was had. The grounds for the motion were:

1. There was a manifest injustice that resulted from the plea bargaining between the defendant's former attorney and the county attorney and, in addition, the court received incomplete and partially untrue testimony at the sentencing hearing which had been held, which resulted in the defendant receiving a far more severe sentence and probationary terms than would warrant under true circumstances.

2. The sentencing hearing was held without notice to the defendant of the intention of the court or the prosecuting attorney as to what witnesses were going to be called in order that the defendant could prepare to comment upon or rebut such evidence.

3. The sentence was unreasonable, harsh and exceeded the legal limitations of the court insofar as the probationary period of time was concerned.

4. The defendant believes himself innocent and has a meritorious defense.

At the hearing on the motion, the defendant called one of his adopted children, actually a grandchild. She testified as to her version of the officers going to the house following the bar incident. She testified that her grandpa said, "Do you have a warrant," and the officer said, "No," so her grandfather told them to get out. He was carrying a rifle but she testified that it was pointed toward the ground as he followed the officers away and that he did not point it at them. He asked her after the officers had left to go get him a horse. She indicated that he shot twice but not in the direction of the officers. He rode off on the horse. The youngster was then picked up and taken into town by a neighbor. This testimony did not go to the assault on the lady bartender.

The court found that there was no manifest injustice in accepting the defendant's plea of nolo contendere and he was fully aware of what he was doing, nor did the state of the facts change as a result of the hearing. The court went on at some considerable length to further explain his sentence and why it was necessary under the circumstances of this case.

Rule 33(d), W.R.Cr.P., pertaining to withdrawal of a plea, is as follows:

"A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment or conviction and permit the defendant to withdraw his plea."

This is identical to Rule 32(d), Fed.R.Cr. P., so there is an abundance of authority to rely upon in fixing standards for granting or denying[3] withdrawal after sentence. ▪ Consequently, weight must be given federal precedent. Dobbins v. State, Wyo.1971, 483 P.2d 255, 258. Both the footnoted authorities on federal procedure

2. Rule 33(a)(2):

"After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal *in forma pauperis.*"

3. See discussions in 8A Moore's Federal Practice—Criminal Rules, § 32.07[3] and 2 Wright, Federal Practice and Procedure, §§ 537, 538 and 539.

cite Kadwell v. United States, 9 Cir. 1963, 315 F.2d 667, 670, where it was said:

" * * * [W]ithdrawal of a guilty plea *after* sentence is conditioned by Rule 32(d) upon a showing of 'manifest injustice.' This distinction rests upon practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease *after* sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process."

The case before us is an outstanding demonstration of the effort and care expended by a court to assure that the defendant have the benefit of every constitutional protection from arraignment through the hearing on the motion to withdraw. The defendant's background was investigated from A to Z. As said in Kinney v. United States, 1 Cir. 1968, 391 F.2d 901, 902: A defendant "cannot be permitted to try the attitude of the court like a boy sticking his toe in the water and then withdraw if he finds it not to his liking."

■ The defendant argues that he changed his plea to nolo contendere on advice of counsel and he so said in answer to the court's questioning before acceptance of the change of plea. This in itself is no demonstration of a "manifest injustice." Defendant's original retained counsel of his own choice was one experienced in the criminal law, had represented defendant for several years previous in various civil matters and the defendant himself replied that his attorney had not pressured him in any way to enter the equivalent of a guilty plea and that his plea was entirely voluntary on his part. The hearing and evidence at the time of sentencing established a basis in fact for his guilt and lends credence to a well-advised and informed admission of guilt. The plea was scrutinized from every angle by the trial judge. There is no indication that the defendant received erroneous advice.

The only plea bargaining that took place as nearly as the record goes resulted in an agreement that the State would dismiss three of the criminal charges. The State stood on its promise and did dismiss them. The State also promised that it would stand on the recommendation made by the probation officer or make no recommendation; it made no recommendation.

The trial judge made it abundantly clear at the change of plea proceeding that he was not a party to any plea bargaining and, in fact, explained that as a matter of practice he refused to participate in any plea bargaining and so stated to the defendant.[4]

■■ Even if the defendant did receive erroneous advice of counsel upon what to

---

4. "THE COURT: This Court has not been a party to any agreement with Mr. Ross or the prosecutor or the sheriff or anybody else regarding a dispotion in this case. I say that so you'll understand the Court is not bound by any representations which may have been made to you by any person, whether the prosecutor, the sheriff or Mr. Ross or anything else. The changing of your plea and the entry of a plea of nolo contendere does not necessarily invoke leniency on the Court in passing sentence. Whether or not the Court would fine you upon a conviction, or whether or not the Court would send you to the penitentiary on a conviction would depend entirely upon the facts and circumstances; upon all the facts and circumstances that surround your particular case. It would depend upon your past history. I noticed in the report it suggested that you didn't exactly do this same crime before but you did go beserk while you were drinking whiskey before. That would have to be taken into consideration.

"It would depend upon your present frame of mind, upon your present circumstances. The sentence or fine or whatever might be done would depend upon such things as how the Court would appreciate what other persons in the community might do depending upon

expect by way of a sentence or there was some hope of leniency, these are not sustainable grounds for withdrawal of a plea of guilty or nolo contendere when there is no showing of an actual reliance on statements of the judge or the prosecutor which prompted the entry of a guilty or nolo contendere plea. McGiff v. State, Wyo.1973, 513 P.2d 407, reh. den. 514 P.2d 199, 202, cert. den. 415 U.S. 992, 94 S.Ct. 1592, 39 L.Ed.2d 889, on rehearing in 514 P.2d. The burden is on the defendant to make such a showing and he has failed to show any manifest injustice or any unfairness at all or that he was deceived in any fashion or that he was in the slightest tricked into withdrawing his plea of not guilty and entering his plea of nolo contendere. Refusal to allow withdrawal of the plea was proper.

In regard to defendant's claim that he received no notice that witnesses would be produced at the sentencing hearing, nowhere in either the statutes of the state or the rules of criminal procedure is there any requirement of notice that testimony will be produced and taken at time of sentencing. Rule 33(a) provides only that, " * * * Before imposing sentence the court shall afford counsel an opportunity to speak and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of the punishment."

■ We have examined the authority [5] cited by the defendant that notice must be given in the light he argues. The case does not say that but only that the sentencing court must give an opportunity to both sides to present evidence. In the footnoted case, the court asked defendant, "Do you care to introduce any proof yourself in connection with this part of the case?" The reply through counsel was, "No, if the Court please." It was held that the opportunity was afforded. The situation is identical here. Defendant here was afforded the opportunity to produce evidence in the same manner. The defendant's wife testified on his behalf. After that, he was again asked if he had anything further. Counsel answered, "May it please the Court, I have nothing further to offer." Both the defendant's counsel and defendant personally were asked, "Do you wish to make any further statement in your own behalf or present anything further to the court?" Answer: "No, Your Honor." Defense counsel even said, "That is one reason I advised him to plead nolo contendere. He couldn't help me in defending himself to contradict what the people said here as actually having occurred. We have no way to contradict it." The nonexistence of any other notice, even if necessary, was waived by the absence of objection.

The notice referred to in other cases is in the same sense. The defendant must be given notice of his opportunity to present whatever he has in mitigation. State v. Freeman, 1963, 85 Idaho 339, 349, 379 P.2d 632, 637; United States v. Weinschenk, 3 Cir. 1969, 414 F.2d 276. When we discuss notice, we are talking about due process. As said in Williams v. People of the State of New York, 1949, 337 U.S. 241, 251, 69 S.Ct. 1079, 1085, 93 L.Ed. 1337, 1344, reh. den. 337 U.S. 961, 69 S.Ct. 1529,

how you're treated. In other words, if other people who are similarly situated would go out and do a similar thing, if they got off easy, then the Court would be more inclined to be severe in its sentencing. On the other hand, the Court would give consideration to the plusses in your life to your senses of responsibility and so forth.

"It is those type of things that the Court would take into consideration in passing sentence and judgment in this case. Not on whether or not you enter a plea of guilty or nolo contendere. And so again, the Court advises you not to be persuaded to suffer the conviction to enter against you voluntarily, unless, you personally believe that that is the best course of action available to you, and that you have no lawful defenses to the charge. Do you understand that?

"THE DEFENDANT: Yes, Your Honor."

5. 24B C.J.S. Criminal Law § 1983(2) and Courtney v. State, 1947, 185 Tenn. 247, 205 S.W.2d 752, 754.

93 L.Ed. 1760, reh. den. 338 U.S. 841, 70 S.Ct. 34, 94 L.Ed. 514:

" * * * The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts—state and federal —from making progressive efforts to improve the administration of criminal justice."

■ Even looking at the affidavits and evidence the defendant was afforded the opportunity to present at the hearing on the motion to withdraw the nolo contendere plea, nothing of any significance was added. The trial court took evidence at the sentencing hearing for the purpose of establishing a basis in fact and the tendencies of the defendant toward violence. The general picture was not changed as the trial judge saw it and as we view the record. Speaking now to practices followed in sentencing of an accused, a judgment in a criminal case will not be disturbed because of sentencing procedures unless there is a showing of an abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. We have none of that here.

We now move to the issue of the sentence and judgment of the trial court, in its terms.

The statutes in Wyoming with respect to sentencing and probation leave the matter to the discretion of the trial judge. Section 7-318, W.S.1957, 1973 Cum.Supp., states:

"After conviction or plea of guilty for any offense, except crimes punishable by death or life imprisonment, the court may suspend the imposition of sentence, or may suspend the execution of all or a part of a sentence and may also place the defendant on probation or may impose a fine applicable to the offense and also place the defendant on probation. With the consent of a defendant charged with a crime, except a crime punishable by death or life imprisonment, the court may suspend trial and place such defendant on probation."

Section 7-321, W.S.1957, states:

"The period of probation or suspension of trial or sentence and the conditions thereof shall be determined by the court and may be continued or extended. Upon the satisfactory fulfilment of the conditions of suspension of trial or sentence or probation the court shall by order duly entered discharge the defendant. At any time during the period of suspension of trial or sentence or probation, the court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation or suspension of trial or sentence. As soon as practicable after the arrest the court shall cause the defendant to be brought before it and may proceed to deal with the case as if no suspension of trial or sentence or probation had been ordered."

We find no pertinent direction in Rule 33(e), W.R.Cr.P., providing only that, "After conviction of an offense not punishable by death or by life imprisonment, the defendant may be placed on probation as provided by law."

The trial judge was frankly in doubt about the limitation, if any, on the period of probation. He spoke of five years plus 14 years. The only reference to five years that we can find is in § 7-315, W.S.1957, pertaining to the situation where no penitentiary sentence is imposed and suspended. Under that provision, a defendant is placed directly on probation, bypassing any consideration of a penitentiary sentence at the time.[6] The defendant here was not placed

---

6. "Whenever any person shall have been found guilty by the verdict of a jury empanelled to try his case, or by his plea of guilty, duly entered in the cause, of any felony except murder, rape of a woman or female child forcibly and against her will, or arson of a dwelling house or other human habitation in the actual occupancy of a

on probation under that statutory section, so therefore any consideration of a statutory limit on the term of probation must be set aside.

An examination of the Standards Relating to Probation, forming a part of the American Bar Association Project on Minimum Standards for Criminal Justice in § 1.1(d) discloses a recommendation that: "The court should specify at the time of sentencing the length of any term during which the defendant is to be supervised and during which the court will retain power to revoke the sentence for the violation of specific conditions. Neither supervision nor the power to revoke should be permitted to extend beyond a legislatively fixed time, which should in no event exceed two years for a misdemeanor or five years for a felony."

On the other hand, the National Advisory Commission on Criminal Justice Standards and Goals (Corrections) in § 16.11, in defining the term for which probation may be granted, recommended legislation which would require a specific term not to exceed the maximum sentence authorized by law, except that probation for misdemeanants should not exceed one year. So there is more than one view on how long probation should go on.

■ It must be kept in mind that a court has no inherent right to grant probation. The authority over sentencing comes from the legislature.[7] We cannot therefore adopt the views and recommendations of some recognized organization or group, however thorough and authoritative they may be. The two studies made and referred to are recommendations for legislative consideration.

At first blush, it may appear that a trial court is given unlimited authority as to the length of probation. That is not so, when

human being, the court in which such verdict was found or plea of guilty entered, shall ascertain, if possible, whether the offense of which the accused is found guilty is his first offense, as well as the extent of moral turpitude involved in the act committed, and such other facts and circumstances relating to the accused as he may desire to know; and if satisfied that such person was a person of good reputation before the commission of the offense charged and had never before been convicted of any felony, and that if permitted to go at large would not again violate the law, may in its discretion, by an order entered of record, delay the passing sentence upon such verdict, or plea, and parole such person and permit him to go at large upon his own recognizance, conditioned that such person so paroled will personally appear and report himself to the said court twice in each year at such times and places as may be fixed in such order and that he will demean himself while at large in a law-abiding manner and live a worthy, respectable life, and that he will not leave the state without the consent of the court; and the court, if satisfied at the time of such appearance, that such person has demeaned himself in a law-abiding manner and lived a worthy, respectable life, may by an order of record, continue such parole from time to time for the period of five years, at the expiration of which period the court shall enter an order finally discharging such person, and no further proceedings shall be had upon such verdict or plea; provided, however, that at any time after the expiration of one year

from the date of said original parole the court shall have the power in its discretion to terminate said parole and finally discharge such person and annul such verdict or plea of guilty; provided, however, that if at any time before the expiration of said period of five years, or before the final discharge of such person, the court shall have cause to believe that such paroled person has attempted to leave the state or failed to comply with the terms of his parole, it shall be the duty of the court to cause a warrant to issue for the apprehension and arrest of such person and require him to be brought before the court and thereupon to inquire into his conduct since his said parole, and if satisfied from such inquiry that such person has violated the terms of his parole and recognizance, the court shall thereupon have the power to impose sentence upon such verdict or plea against such person in the manner and to the same extent as though the passing of sentence had not been delayed and such person had not been paroled or permitted to go at large."

7. Affronti v. United States, 1955, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62; Andrus v. Turner, 10 Cir. 1970, 421 F.2d 290, 292; In re Gutierrez, 1957, 82 Ariz. 21, 307 P. 2d 914, 915, cert. den. 355 U.S. 17, 78 S.Ct. 79, 2 L.Ed.2d 23; State v. Perez, 1971, 15 Ariz.App. 300, 488 P.2d 505, 506–507; Pete v. State, Alas.1963, 379 P.2d 625, 626, and State v. Smith, 1946, 83 Okl.Cr. 188, 174 P. 2d 932.

we analyze what probation actually is. It is not forgiveness, though it may be a form of limited grace to the worthy. As said in Korematsu v. United States, 1943, 319 U.S. 432, 435, 63 S.Ct. 1124, 1126, 87 L.Ed. 1497, 1499, the liberty of an individual judicially determined to have committed an offense is abridged in the public interest when he is placed on probation. Such things as paying a fine, making reparation, being supervised, "and other incidents of probation emphasize that a probation order is 'an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline.' [Citing case.]"

A person on probation is not serving a sentence but is in a status something less than imprisonment that follows upon suspension of sentence. It connotes an absence of the rigors of confinement in a penitentiary, but at the same time is a substitute for complete imprisonment. Probation is indeed a punitive sanction. It is imposed only upon convicted criminals, and results in a considerable restriction upon their liberty as well as intrusions upon their private lives. Fundamentally, it is a device for achieving the same social goals furthered by the more conventional penalty of society's desire for retribution and deterrence and its hope for rehabilitation. It is a loss of a part of cherished liberty in that freedom of movement and activity is restricted; the criminal is constantly under surveillance, must report his activities on a regular basis, and is deprived of intoxicants. In this case, twelve restraints are placed upon independence, including a requirement of taking psychiatric counseling plus those terms of an agreement with the State Department of Probation and Parole, which embraces such requirements as conferring before opening a bank account, entering into contracts, obtaining a divorce, inspection of living conditions and others. Probation is in no sense a regime of unlimited freedom. A probationer is a convict without bars with a sword of threat hanging over his head, that for a deviation the doors may be slammed shut on him.

██ We therefore conclude that probation is constructive confinement and the restraints of probation cannot exceed a period in excess of the maximum term of imprisonment authorized by the statute violated. In this case it would be 14 years, less the short jail term. We so hold.

The defendant has been required to post a $50,000 bond as a condition of probation to guarantee compliance with the terms of probation. Our statute is silent in this regard but the sentencing court is authorized to grant probation and "the conditions thereof shall be determined by the court." [8]

The American Bar Association Project on Standards for Criminal Justice with respect to Standards Relating to Probation states in § 3.2(e), "The performance bond now authorized in some jurisdictions should not be employed as a condition of probation."

The Model Penal Code Sentencing Provisions, American Law Institute, Model Penal Code (Proposed Official Draft 1962), provides in § 301.1(2)(k) that the court as a condition may require the defendant "to post a bond, with or without surety, conditioned on the performance of any of the * * * obligations" of probation. The National Advisory Commission on Criminal Justice Standards and Goals (Corrections) agrees with the Model Code in its Standard 16.11, page 578.

However that may be, as can be seen, there is a division of thinking on the bond proposition. It is a legislative matter as we mentioned when discussing the term of probation. Our legislature has not spoken specifically. How far can a trial judge go in this regard? Was it proper to require a probation bond in the sum of $50,000.-00? Again, we are compelled to approach any limitation by analogy to the punishment authorized by the legislature.

██ The terms and conditions of probation cannot exceed the statutory penalty

8. Section 7-321, W.S.1957.

for the violation of law prosecuted—not amount to the risk of imposition of a punishment greater than that authorized by law if suspension of sentence and probation were not granted. The terms of probation must be harmonized with the authorized punishment for the crime.

The trial court has contrived a new money penalty for violation of the law which far exceeds the fine which could be levied in any criminal case. Assuming that the defendant got drunk and thus violated his probation, the greatest criminal financial penalty would be a fine of $100.00. The fine for the instant offense is only $1,000.00.[9] If he committed an assault while armed with a dangerous weapon, the fine could be only in that amount as a maximum. The largest and most severe fine for violation of any criminal law in the State of Wyoming of which the court is aware is $25,000.00 for possession with intent to sell and selling certain hard drugs.[10]

 To permit the court to require a bond of the size specified as a condition of probation would enlarge the punitive power of the court far beyond that contemplated by the laws of this state. Not only could the trial court then order the sentence already levied on a violating probationer (suspended during probation) executed, but also could impose additional punishment by way of bond forfeiture, in an amount far in excess of any fine for any offense and in effect a fine beyond statutory limits. Whether the forfeiture is attributed to the instant offense or a new one, it is in excess of any authorized money punishment.

The largest bond for performance of the conditions of probation in this case would be $1,000.00 less the amount of any fine assessed. We consider that the court acted in excess of its powers. In doing so, it was not inflicting cruel and unusual punishment nor even abusing its discretion as

charged by defendant. We are not saying that some bonds in excess of an authorized fine may not be required as, for example, to cover restitution or reparations in proper cases. We concern ourselves here only with that type of bond running to the State and not by way of reimbursement for actual loss in some circumstances and the forfeiture of which would be something other than a penalty or in the nature of a fine. That type of bond must be considered in each case as any question in that regard arises.

 In Williams v. Illinois, 1970, 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586, 594, it was said, " * * * Sentencing judges are vested with wide discretion in the exceedingly difficult task in determining the appropriate punishment in the countless variety of situations that appear." As noted in Bentley v. State, Wyo.1972, 502 P.2d 203, when a sentence is within the limits as set by the legislature, and since the determination of the penalty is exclusively within the discretion of the trial court, it must stand.[11] We find neither the sentence nor any of the other conditions of probation objectionable.

 We appreciate that the sentencing judge was dealing with a man who had demonstrated violence and of dangerous disposition and mentally unstable when under the influence of intoxicating liquors. On the other hand, he was one who, following a successful military career, had through application and hard work in a joint effort with his wife, built up a substantial estate estimated at near $400,000.-00. The trial judge in his wisdom was trying to devise a way to salvage the life of a human being under these circumstances and at the same time protect the community and the defendant's family from danger. Public purposes, as well as private, must be served in devising a plan of probation. If the legislature had autho-

9. Section 6-70, subd. B, W.S.1957, 1973 Cum. Supp.

10. Section 35-347.31, W.S.1957, 1973 Cum. Supp.

11. See also Andrus v. Turner, 10 Cir. 1970, 421 F.2d 290, and Cavanagh v. State, Wyo. 1973, 505 P.2d 311.

rized the courses we hold unauthorized, we may not have interfered.

We shall leave it up to the trial court to decide whether it wishes to proceed with its judgment of conviction, as modified in the sense of this opinion, or reconsider and revise it, in the light of our decision. He may vacate the entire sentence and judgment and sentence anew, if that be his conclusion.

Affirmed except as to the period of probation and the bond provision, as explained in this opinion, and remanded for reconsideration, as indicated.