Marc GRIEBEL, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

George Bob COEN, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Nos. 87–179, 87–180.

Supreme Court of Wyoming.

Oct. 28, 1988.

Charles E. Hamilton of Hamilton Law Associates, Riverton, for appellants.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Paul S. Rehurek, Asst. Atty. Gen., argued, for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and BROWN, J., Retired.[*]

CARDINE, Chief Justice.

Appellants pled guilty to interference with a police officer, § 6–5–204(a), W.S. 1977, and each received a sentence of 120 days in jail and a $250 fine. On appeal they claim procedural irregularities in the sentencing procedure. Specifically, the dispositive issue is whether the sentencing judge[1] erred in failing to disclose to appellants, before sentencing, that he had viewed a videotape taken of them while they were in police custody. We reverse.

## FACTS

Appellants were arrested on August 11, 1986, for violating a provision of the Riverton City Code which makes it illegal, except under specified circumstances, for a minor to "be or remain in or upon any of the streets, alleys or public places in the city at night after the hour of 12:00 midnight until 6:00 A.M. * * *." Appellants were taken to the Riverton police station, where an altercation erupted among Officer Keabler and the two youths. As a result of this activity, appellants were charged with assaulting an officer engaged in the performance of his duties, a felony. Section 6–5–204(b), W.S.1977. At appellants' preliminary hearing, Officer Keabler testified to the events occurring at the police station. During a recess which followed the officer's testimony, the prosecutor allowed defense counsel to view a videotape which the State planned to offer as evidence in the

---

[*] Retired June 30, 1988, but continued to participate in the decision of the court in this case pursuant to order of the court entered July 1, 1988.

1. County Court Judge Donald Hall was the sentencing judge. The sentence was appealed to Robert Ranck, District Court Judge, who affirmed the sentence.

preliminary hearing. The videotape, a product of the jail security system, purportedly showed appellants striking each other in the face and otherwise injuring themselves while confined in the jail cell. After defense counsel viewed the tape, a plea bargain was entered and appellants pled guilty to the reduced charge of interference with a peace officer, a misdemeanor. Section 6–5–204(a), W.S.1977. The record does not reflect that the videotape was viewed in open court or received by the judge at the preliminary hearing.

At appellants' sentencing, the court informed appellants that it had received presentence reports and asked appellants' attorney if he had been provided copies of them. Appellants' attorney responded in the affirmative. The court then provided an opportunity for him to comment on Mr. Coen's presentence report, which recommended "a combination of jail time and probation." Appellants' attorney informed the judge that Mr. Coen had arranged to attend alcohol rehabilitation classes. It was also brought to the court's attention that Mr. Coen had been involved in a drag-racing incident in Jackson several months after the Riverton incident and that he had dropped out of college. The court then announced that it was sentencing Mr. Coen to a jail term of 120 days and a fine of $250.

Turning to Mr. Griebel, the court asked defense counsel if he "had a chance to review all of the information submitted [to him] in his case." The attorney replied in the affirmative and said that he did not wish to address the court about that information. Mr. Griebel's presentence report recommended "probation with conditions directly related to alcohol usage * * *." The judge announced that Mr. Griebel would receive the same sentence as Mr. Coen. The judge then made the following comments:

"Now let me tell both you gentlemen my impressions. I've just heard it again today that both of you throughout the course of your conduct in relation to these charges have read your versions of these offenses quite carefully. Both of you have the tendency to want to blame everybody else for your conduct. I've seen that in an in-depth analysis of your situation Mr. Griebel, even from the time that your parents lost control of you sir and you still apparently deny any serious problems with alcohol and/or drugs. Mr. Coen may be in a somewhat different situation. But inherent in both of these cases all I've heard was how the police have been picking on you gentlemen and just as recently in your episode in Jackson that the local boy was not pursued but you were arrested, and I suspect Mr. Coen that alcohol was also involved in that incident, wasn't it? Well, both of you gentlemen have been through numerous episodes with the law. Both of you apparently still deny that you have any serious problems because of your versions submitted to the presentence officers in these cases and in view of the things that you said to the Court. I viewed last night, in the privacy of my home on my VCR, the tape of part of your arrest procedures at the city jail. I also viewed your conduct while handcuffed, both of you, in your cells. It occurs to me that both of you deliberately banged your heads against the cell, your bodies and inflicted injuries upon each other in a deliberate effort to make it look like the police had beaten you up to substantiate your story apparently about what you're still sticking to in these matters. I find that kind of thinking totally—totally weird—and I strongly suspect in view of the fact that the reports that I have received that neither of you that night were involved in the consumption of any alcohol, that you were spaced out on drugs of some kind, because I cannot for the life of me visualize conduct which I saw by you two gentlemen and your actions and your language, unless you were spaced out on drugs, because I just don't think that somebody rational would engage in such conduct. That is one of the reasons, plus your past records and your continual denial of your use of alcohol and the problems it causes you as not being fit candidates for a probated sentence at this

time. You may appeal my judgment and sentence if you wish through your counsel. Court is adjourned."

The sentencing hearing terminated at this point. Appellants contend that the sentencing judge erred in relying on the videotape without notice to appellants.

## DUTY TO DISCLOSE

■ A sentencing court is entitled to have presented to it whatever information is available that will assist it in the difficult task of sentencing, as it needs to inform itself about the circumstances surrounding the events and the facts relating to the accused. *MJP v. State*, Wyo., 706 P.2d 1108 (1985). On a sentencing matter, a court has broad discretion to consider a wide variety of factors about the defendant and his crime. *Cavanagh v. State*, Wyo., 505 P.2d 311 (1973). Much of this information will be included in the presentence report prepared under Rule 33(c), W.R. Cr.P., which provides:

"(c) Presentence investigation.

"(1) When Made.—The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs.

"(2) Report.—The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation, or in the correctional treatment of the defendant, and such other information as may be required by the court. *The court, before imposing sentence, shall disclose to the defendant or his counsel all of the ma-*

*terial contained in the report of the presentence investigation and afford an opportunity to the defendant or his counsel to comment thereon.* The material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the state." (Emphasis added.)

This rule imposes an obligation upon the sentencing court to disclose the information in the presentence report and provide an opportunity for the defendant or his counsel to comment upon that information. This policy helps to insure that the defendant is sentenced on the basis of accurate information. It also insures that the defendant is given a meaningful opportunity to rebut or mitigate the presentence information, whether or not it is accurate.

The disclosure of presentence information is addressed in Standard 18–5.4 of the ABA Standards for Criminal Justice which provides:

"Fundamental fairness to the defendant requires that the substance of all derogatory information which adversely affects the defendant's interests and which has not otherwise been disclosed in open court should be called to the attention of the defendant and defense attorney in a form sufficient to give an adequate opportunity for rebuttal." III ABA Standards for Criminal Justice, Standard 18–5.4, p. 363 (1980).

The comments to this standard make it clear that in order to discourage evasion of this disclosure requirement "it must be understood that the disclosure obligation contemplated here runs to all sentencing data that will reach the court, regardless of when prepared, by whom, and how conveyed." Id. at 376. This principle is reflected in the case law of several jurisdictions.[1]

---

1. *Commonwealth v. Phelps*, 450 Pa. 597, 301 A.2d 678, 679 (1973) (Pennsylvania Supreme Court adopts ABA standard); *Commonwealth v. Schwartz*, 275 Pa.Super. 112, 418 A.2d 637, 638 (1980) ("[A]ny ex parte information received by a judge before sentencing should be disclosed to a defendant so that he may have an opportunity to examine it and dispute its accuracy."); *State v. Leckis*, 79 N.J.Super. 479, 192 A.2d 161, 165

(1963) ("In passing sentence a judge should limit himself to what he has learned in the course of the trial or hearing before him, and the information officially and reliably recorded in the presentence report."); *Bartholomey v. State*, 267 Md. 175, 297 A.2d 696, 706 fn. 13 (1972) ("Any information which might influence the judgment of the sentencing judge * * * should * * * be called to the defendant's attention so

The State concedes that the videotape was apparently not in the presentence report, but argues that we must affirm appellants' sentences because the record does not demonstrate how the court obtained the videotape. We disagree. The disclosure obligation rests upon the court. The record clearly discloses that the videotape, which had been in the possession of the deputy county attorney, somehow came into the possession of the sentencing judge. Under these circumstances, it was the responsibility of the court to make a record concerning disclosure of the tape in the same way that it made a record of disclosure of the presentence report. What occurs on remand is not now before us. Our obligation is to apply the law as we find it—not ignore it because we think it will make no difference on resentencing—and we assume appellants will not be punished for exercising their constitutional right to appeal.

We hold that appellants' sentences must be reversed for "procedural conduct prejudicial to defendant[s]," *Hicklin v. State,* Wyo., 535 P.2d 743, 751, 79 A.L.R.3d 1050 (1975), and we remand for resentencing.

BROWN, J., Retired, files a dissenting opinion.

BROWN, Justice Retired, dissenting.

The majority opinion is apparently premised on the assumption that in some surreptitious manner a videotape came into the possession of the trial judge. This impression can be created from reading appellants' brief, but not from reading the record. The record does not tell us the circumstances under which the trial judge received the videotape; whether it was proper or improper.

The existence of the tape was not unknown to appellants. The record reveals that it was viewed during a recess at the preliminary hearing. The record further discloses that, at sentencing, the trial judge stated that he had viewed the tape.

It seems to me most strange that, if this business about the judge viewing the tape came as a surprise to appellants or their counsel, something would have been said at sentencing. No objection was made nor was any comment made or explanation requested. The sentencing judge never had a chance to rule on the question now before the Supreme Court.

On appeal the court should not consider matters not brought to the attention of the lower court. Furthermore, this court should not consider any matter upon which the record is silent, *Mentock v. Mentock,* 638 P.2d 156 (Wyo.1981).

Not every trial error mandates a reversal. Assume arguendo that the videotape was handled improperly. In that event, I believe the error was harmless. In *Lozano v. State,* 751 P.2d 1326 (Wyo.1988), the trial judge saw the appellant violate the terms of her probation. In that case, the trial judge in effect was aware of evidence that was not formally before the court. On appeal of revocation of her probation, the appellant, for the first time, asserted that it was error for the trial judge not to recuse himself from the revocation hearing. This court gave short shrift to the alleged error. Similarly, in the case before us, the sentencing judge had evidence before him that was not formally before the court. Although factually different, the underlying rationale of the *Lozano* case should apply here.

At the sentencing hearing, after remand, I will be interested to see what appellants can do to explain or contradict what is shown on the videotape.

I would affirm.

as to afford him an opportunity to refute or discredit it."); *Zeff v. Sanford,* 31 F.Supp. 736, 738 (N.D.Ga.1940) ("[A]ny information not received from the accused himself or not given in his presence, which might influence the judgment, should be called to his attention * * * so that he may be afforded an opportunity to object to its use and to rebut same.").