748 A.2d 654 (1999)
329 N.J. Super. 588
STATE of New Jersey, Plaintiff,
v.
Joshua Billy PIERRE, Alvin Deveaux, and Donnie Jarvis, Defendants.
Superior Court of New Jersey, Law Division, Essex County.
Decided March 19, 1999.
Michael C. Scoon, East Orange, for defendant Joshua Billy Pierre.
Allison F. Schumer, Montclair, for defendant Alvin DeVeaux.
*655 Michael V. White, Chief Assistant Essex County Prosecutor, for the State of New Jersey (Patricia A. Hurt, Essex County Prosecutor).
KLEIN, J.S.C.
This case arises out of a failed robbery. Late on the night of July 12, 1997, defendants Joshua Billy Pierre, Donnie Jarvis and Alvin DeVeaux attended a party in East Orange, New Jersey. DeVeaux and Pierre were co-workers, and were previously acquainted with Jarvis. The latter was the only one of the three who had a car. At some point, DeVeaux and Pierre asked Jarvis to drive them to get some drinks, presumably to bring back to the party.
Because of the lateness of the hour, the bar to which the individuals drove was closed. As they continued to drive around, Pierre decided to obtain money through a robbery, and to select a victim for that purpose. While in the car, Pierre took out a single-blade folding knife which was in the closed position. He wrapped it in a T-shirt so that, partially concealed, it would give the appearance of a gun and intimidate the victim into surrendering his money.
At approximately 3:00 a.m., when Pierre observed a person who would be the intended victim, he and DeVeaux exited the car. Jarvis remained in the vehicle. Pierre approached the victim, Ronald Watson, in the vestibule of an apartment building and announced "Just give me the money and you won't get hurt." The simulated "gun" was pointed at Watson.
However, Watson turned out to be an off-duty East Orange police officer. He pulled out his service revolver and proceeded to fire all sixteen rounds. Pierre was shot in the legs but managed to get into Jarvis' car, while DeVeaux ran in the other direction. Jarvis took Pierre to the hospital where they both were arrested; DeVeaux was apprehended hiding near the crime scene.
DeVeaux was indicted on charges of second degree conspiracy to commit robbery (2C:5-2/2C:15-1) and first degree armed robbery with a knife and/or handgun (2C:15-1). Pursuant to a plea agreement, he pleaded guilty to second degree conspiracy and first degree robbery, with the understanding that it would be sentenced as a second degree crime.
Pierre was indicted on second degree conspiracy to commit armed robbery (2C:5-2/2C:15-1), first degree robbery with a knife and/or handgun (2C:15-1), fourth degree aggravated assault (2C:12-1b(4)), third degree unlawful possession of a weapon (handgun) (2C:39-5b), second degree possession of a weapon (handgun) for an unlawful purpose (2C:39-4a), fourth degree unlawful possession of a knife (2C:39-5d) and third degree possession of a knife for an unlawful purpose (2C:39-4d). He entered a guilty plea to conspiracy and first degree armed robbery (which by agreement would be sentenced as second degree), unlawful possession of a knife and possession of a knife for an unlawful purpose.[1]
The State's recommendation called for each defendant to serve 85% of the total sentence of five years for DeVeaux and seven years for Pierre, respectively, pursuant to N.J.S.A. 2C:43-7.2 (the No Early Release Act). Each defendant reserved the right to argue against application of the statute at the time of sentencing. The issue before the court is whether a robbery, committed with a folding knife in the closed position and wrapped so as to simulate a gun, is a "violent crime" for purposes of the No Early Release Act.
The statute provides in pertinent part as follows:

*656 a. A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.

* * * * * *
d. For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S. 2C:11-1, or uses or threatens the immediate use of a deadly weapon....

For the purposes of this section, "deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury. (Emphasis added)
It is undisputed that there was no death or serious bodily injury in the present case. Therefore, the characterization of the event as a "violent crime" under this statute is totally dependent upon whether defendant(s) used or threatened the immediate use of a "deadly weapon."
The definition of "deadly weapon" in N.J.S.A. 2C:43-7.2d is different than that set forth in N.J.S.A. 2C:11-1c, which contains language focusing on the reasonable belief of the victim that an object is a deadly weapon. In State v. Riley, 306 N.J.Super. 141, 703 A.2d 347 (App.Div. 1997), the court interpreted N.J.S.A. 2C:11-1c in the context of reversing a conviction of first degree robbery. According to Riley, "deadly weapon" embraces firearms and other per se deadly weapons, as well as the open-ended category of all other material objects that can be used or are intended to be so used under the attendant circumstances. Id. at 146-47, 703 A.2d 347. The critical inquiry with respect to the latter class of objects is "did a particular defendant possess a particular object at a particular time and in a particular situation with the intention of using it as a weapon." Id. at 147, 703 A.2d 347. In Riley, the defendant had a pocket knife on his person, but because it remained in the defendant's pocket and was not used in the robbery, it was not a deadly weapon.
As of the date of this opinion, the only known reported case to interpret "deadly weapon" in the context of the No Early Release Act is State v. Ainis, 317 N.J.Super. 127, 721 A.2d 329 (Law Div.1998). In that case, the court adopted the Riley weapon analysis,[2] and held that a robbery committed with a hypodermic needle that was purportedly infected with the AIDS virus was a "violent crime" carrying a minimum term of 85% of the sentence imposed.
In Ainis, the defendant entered a convenience store and approached the register clerk, gesturing toward the clerk with a hypodermic needle and saying "Give me all the money unless you want to get AIDS", and, "if you look at anybody weird, like there is something going wrong, I'll jump over the counter and kill you." The court held that the needle was not a per se deadly weapon, but that under the facts and surrounding circumstances, the needle as used by the defendant at the particular time and in the particular situation "must *657 absolutely be considered a deadly weapon":
To conclude from these circumstances that the needle was not a deadly weapon would defy common sense and fly in the face of rational thinking. It is generally known that AIDS is a deadly disease, it is obvious that the defendant intended to create the impression that he had a deadly weapon and was willing to use it, and the clerk had every reason to believe that she was being threatened with death or serious bodily injury. Ainis, supra, 317 N.J.Super. at 133, 721 A.2d 329.
In the present case, defendants had a knife, but they did not want their victim to know it was a knife. It was disguised, wrapped in a T-shirt, to look like something it was not, namely a gun. There is no issue that these proofs are sufficient to establish the crime of robbery. However, although the victim may have reasonably believed that he was being threatened with a gun, that is irrelevant for purposes of N.J.S.A. 2C:43-7.2d. Pierre demanded the victim's money, and used the object solely to intimidate him into complying. He testified at the time of the guilty plea as follows:
MR. SCOON: What was the purpose of wrapping the knife?
THE DEFENDANT: It really was for me to conceal the knife so that looked as if it was a gun.
MR. SCOON: But you never intended to harm or hurt anyone?
THE DEFENDANT: No. (T15-7 to 13)

* * * * * *
MR. WHITE: Did you make a statement to the victim I want your money?
THE DEFENDANT: Yes, I did.
MR. WHITE: Did you point the knife which was wrapped in the shirt at the victim?
THE DEFENDANT: Yes, I did.
MR. WHITE: Did it give the appearance it was a gun?
THE DEFENDANT: Yes, I think so. Yes.
MR. WHITE: That's what you wanted to give, right, the appearance it was a gun?
THE DEFENDANT: Well, I didn't want them to know there was a knife.
MR. WHITE: You wanted to have an appearance of a gun? Is that correct?
THE DEFENDANT: Yes. (T23-23 to 24-13).
The State argues that there is an issue as to whether a gun or a knife was used in the commission of this crime. No gun was ever found; the only "evidence" of a gun is the victim's own testimony that he saw a gun. This indicates that defendants succeeded, not in the robbery, but in the plan to convey the appearance that they were armed with a gun. At the trial of Jarvis, the State proceeded on the theory that a knife was involved, and produced a knife that was found in the street across from the crime scene. All the defendants testified that Pierre had a knife, albeit that they did not identify the particular knife used at trial.
Significantly, the testimony was that the knife was not only swathed in a shirt, but it was also in a closed position at all times. Both Pierre and DeVeaux stated in connection with their guilty pleas that the knife was the type that had to be opened manually, rather than by a pushbutton. Although Pierre testified at the trial of Jarvis that it was "like a switchblade knife", it is clear from the context of that testimony that he was talking about the size of the knife rather than its operation. The court is satisfied that the object in this case was not a "switchblade knife" as defined in N.J.S.A. 2C:39-1p, or a "dangerous knife" as defined under 2C:39-1r, even assuming for the sake of argument that those definitions are applicable to the No Early Release Act. As such, the knife was not a per se deadly weapon, according to *658 these statutory definitions, and its character was entirely dependent upon its use at the particular time and in the particular situation.
Moreover, this court has serious doubts that the analysis of State v. Riley, supra, classifying "deadly weapons" under N.J.S.A. 2C:11-1c into "per se" and "other" categories, has any application to this matter. Whereas N.J.S.A. 2C:43-7.2 incorporates the definition of "serious bodily injury" under 2C:11-1b, it does not refer to that statute's definition of "deadly weapon". The Legislature was clearly cognizant of 2C:11-1 and determined to utilize a definition that was solely dependent upon proof of the defendant's intent. In fact, that very definition comprised the former version of 2C:11-1c, prior to its amendment in 1981. See Cannel, Criminal Code Annotated, Comment N.J.S. 2C:11-1 [4] (Gann). It is axiomatic that penal statutes are to be strictly construed with respect to both crime and punishment. State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322 (1987); In re Suspension of DeMarco, 83 N.J. 25, 36, 414 A.2d 1339 (1980). The Legislature is presumed to be familiar with its own enactments, and the courts are bound to reconcile them where necessary to give effect to both expressions of the lawmakers' will. State v. Federanko, 26 N.J. 119, 129-30, 139 A.2d 30 (1958). It can be concluded that the Legislature's purpose was that proof of a defendant's intention to use a deadly weapon is required in order for the No Early Release Act to apply; proof of a "per se " deadly weapon does not suffice.
The facts of this case call for a different result than that reached in State v. Ainis, supra. In contrast to the defendant in that case, who brandished a needle accompanied by an express threat to inflict a deadly disease with it, Pierre did not use or threaten the use of a knife as such, nor did he want the victim to know he had a knife in his possession.[3] In order for the knife to be considered a "deadly weapon" there had to be some manifestation, either by words or actions, of such an intent. The defendants did not display the knife or utter any threat to cut or stab the victim, in keeping with their intent to bluff him into thinking they had a gun. Although the defendants apparently succeeded, leading the victim to literally empty his service revolver, it does not matter at all what the victim thought. It is the defendant's intention that controls.
The court is mindful that Pierre could have simulated a gun by wrapping his hand or some other object potentially less lethal than a knife. The reality is that anything has the potential of becoming deadly, depending on how it is used. See, e.g., State v. Lee, 96 N.J. 156, 162, 475 A.2d 31 (1984); State v. Blaine, 221 N.J.Super. 66, 70, 533 A.2d 980 (App.Div.1987). The finding of fact to be made is not whether it was a "potential weapon whose potentiality remained unrealized," see State v. Riley, supra, 306 N.J.Super. at 148, 703 A.2d 347, but whether in this context it was used or intended to be used as a weapon. In this most factsensitive of inquiries, the facts compel the conclusion that it was not.
A related issue is the applicable standard of proof by which the State must prove that the act was a violent crime, i.e. that a deadly weapon was used. No person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt. N.J.S.A. 2C:1-13a. Sentencing factors, however, do not have to be established beyond a reasonable doubt. State v. Biegenwald, 106 N.J. 13, 59, 524 A.2d 130(1987). For example, the trial court determines by a preponderance of the evidence whether the defendant used or possessed a firearm for purposes of enhanced sentencing under the Graves Act, N.J.S.A. 2C:43-6c. State *659 v. Stewart, 96 N.J. 596, 605-06, 477 A.2d 300 (1984).
In a case such as this, the factual issue regarding whether it is a "violent crime" is not an element of the crime of robbery to be found beyond a reasonable doubt by the jury. First degree robbery is established by proof beyond a reasonable doubt that in the course of committing a theft, the actor inflicts or attempts to cause serious bodily injury, attempts to kill someone, or is armed with, or uses or threatens the immediate use of a deadly weapon. N.J.S.A. 2C:15-1. There appears to be no issue that the latter element is satisfied here by the victim's belief that the object was a handgun. However, upon a conviction of first or second degree robbery, the court can require a defendant to serve a mandatory minimum of 85% of the sentence only if it falls within the definition of "violent crime" under the No Early Release Act as discussed above.
The court finds that N.J.S.A. 2C:43-7.2 is a sentence-enhancing statute and thus, analogous to Graves Act situations, the State's burden of proof should be by a preponderance of the evidence.[4] Even under this lesser burden of proof, however, the State has failed to prove that this was a "violent crime" for purposes of N.J.S.A. 2C:43-7.2. Therefore, Pierre and DeVeaux are sentenced to terms of 7 years and 5 years, respectively. The court has set forth on the record the applicable aggravating and mitigating factors, and incorporates herein its sentencing analysis. No period of parole ineligibility will be imposed for the reasons expressed.
NOTES
[1] Jarvis elected to stand trial on charges of second degree conspiracy to commit robbery and first degree robbery. The jury found him not guilty, and therefore he is not involved in this stage of the proceedings.
[2] In a lengthy footnote, the Ainis court rejected the notion that the additional language in N.J.S.A. 2C:11-1c ("or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury") was a "subjective" test, as opposed to the so-called "objective" test of N.J.S.A. 2C:43-7.2d. While this court disagrees with the statement in Ainis that the additional language is "simply a matter of semantics," 317 N.J.Super. at 132, fn. 1, 721 A.2d 329, it finds that attaching such labels as "subjective" or "objective" does little to further the inquiry at hand. What matters is that the absence of this language in 2C:43-7.2d means that the victim's perceptions are irrelevant and cannot serve to convert into a "deadly weapon" an object not so used or intended by defendant to be so used.
[3] It is questionable whether DeVeaux was an "actor" under N.J.S.A. 2C:43-7.2d, since only Pierre possessed and used the knife. However, the court need not reach this issue in light of its ruling that the knife was not a "deadly weapon".
[4] In State v. Ainis, supra, the court reached the opposite conclusion that the applicable standard of proof is beyond a reasonable doubt. This court is not bound by the ruling of another trial court, and declines to adopt the reasoning employed there.