761 A.2d 130 (2000)
335 N.J. Super. 144
STATE of New Jersey, Plaintiff-Respondent,
v.
Shaun L. MOSLEY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 26, 2000.
Decided November 17, 2000.
Ivelisse Torres, Public Defender, attorney for appellant, (M. Virginia Barta, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent, (Daniel I. Bornstein, Deputy Attorney General, of counsel and on the brief).
*131 Before Judges PRESSLER, KESTIN and ALLEY.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal implicates the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, which requires imposition of a mandatory parole ineligibility term of eighty-five percent of the term imposed if defendant has been convicted of a violent crime of the first or second degree as defined by section d. of that statute. The appeal requires us to address the nature, scope and evidentiary premises of the hearing that section e. requires the judge to hold after conviction, and particularly after a guilty plea, in order to determine the applicability of the Act. The specific question before us is whether a NERA sentence may be predicated on an element of a crime with which defendant has not been charged. We hold that it may not.
This is the context in which the issue arises. Three separate indictments were returned against defendant. The first two charged various third- and fourth-degree theft offenses, and one of them also charged a third-degree burglary. The third indictment arose out of events that occurred in 1997 when defendant was nineteen years old. He was charged in that indictment with first-degree aggravated sexual assault against L.T., then a minor less than thirteen years old, by reason of an act of sexual penetration, N.J.S.A. 2C:14-2a(1); first-degree aggravated sexual assault against L.T., in that he committed an act of sexual penetration during the course of committing or attempting to commit a burglary, N.J.S.A. 2C:14-2a(3); second-degree sexual assault against L.T. in that he committed an act of sexual penetration by using physical force or coercion, N.J.S.A. 2C:14-2c(1); second-degree burglary in that he entered a structure with the purpose to commit an offense and in the course of committing the offense inflicted bodily injury on L.T., N.J.S.A. 2C:18-2; and third-degree burglary in that he entered a structure with the purpose to commit an offense, N.J.S.A. 2C:18-2.
Pursuant to a plea agreement, defendant pleaded guilty to the count in one of the theft indictments charging fourth-degree uttering a forged instrument, N.J.S.A. 2C:21-1, and to the count in the other theft indictment charging third-degree burglary, N.J.S.A. 2C:18-2. With respect to the aggravated sexual assault indictment, he pleaded guilty to first-degree aggravated sexual assault by reason of the victim's age. The State's undertaking was to recommend a ten-year sentence on the aggravated sexual assault and concurrent sentences on the two lesser crimes. The State also made clear at the plea proceeding its intention to move for NERA sentencing on the first-degree crime. The plea was accepted and the remaining charges dismissed. At the sentencing hearing and in aid of its NERA motion, the State produced L.T., who testified that defendant had raped her by the use of physical force. Defendant testified that he did not know the victim's age and that the sexual act was consensual and had been preceded by the victim's having cooked him lunch and the two of them then sitting on the couch watching television. The judge accepted the victim's brief testimony, encompassing three and a half transcript pages, and then imposed a NERA sentence.
In challenging the judgment of conviction, defendant raises the following issues:
I. THE SENTENCE IMPOSED UNDER THE 85% RULE MUST BE VACATED BECAUSE THE COURT APPLIED AN INCORRECT STANDARD OF PROOF AND DEFENDANT DID NOT PLEAD GUILTY TO A CRIME INVOLVING FORCE. (Not Raised Below)
II. THE MATTER MUST BE REMANDED BECAUSE DEFENDANT *132 WAS INCORRECTLY ADVISED ABOUT THE PENAL CONSEQUENCES OF HIS PLEA.
We find substantial merit in defendant's first argument.
The first- and second-degree violent crimes to which NERA applies are specifically defined by section d. of the Act, which provides in full as follows:
For purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S. 2C:11-1, or uses or threatens the immediate use of a deadly weapon. "Violent crime" also includes any aggravated sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force.
For purposes of this section, "deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.
A post-conviction hearing on the applicability of NERA is mandated by section e. of the Act, which provides in full as follows:
A court shall not impose sentence pursuant to this section unless the ground therefor has been established at a hearing after the conviction of the defendant and on written notice to him of the ground proposed. The defendant shall have the right to hear and controvert the evidence against him and to offer evidence upon the issue.
We have no doubt that the procedure followed by the trial court here complied with the literal dictates of section e. Our difficulty is simply that that procedure, by permitting judicial fact finding of an element of a crime by a preponderance of the evidence, compromised defendant's federal and state constitutional rights to trial by jury and to due process and thus was constitutionally impermissible. We reach that conclusion even though the procedure of which we disapprove related only to sentencing.
We appreciate that issues of sentencing, including imposition of mandatory parole ineligibility terms, are matters for the judge and not the jury. We also read Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), as drawing a clear distinction, in constitutional terms, between a statute that permits a judge to find a fact not submitted to the jury for purposes of enhancing a sentence within the statutory maximum for the crime of which defendant has been convicted and such fact-finding for purposes of enhancing a sentence beyond that statutory maximum. That is to say, the constitutional defect addressed by the Supreme Court in New Jersey's hate-crime law, which permitted extended-term sentencing in bias-motivated crimes, N.J.S.A. 2C:44-3e, was not based on a generic distinction between elements of the crime and so-called sentencing factors because that issue did not have to be reached. Rather, it was the Supreme Court's holding that due process and the right to trial by jury are violated when the judge's fact-finding, other than the fact of a prior conviction, permits imposition of a sentence greater than the statutorily prescribed maximum sentence for the crime of which defendant is convicted. We thus understand that the Apprendi holding does not strictly apply here because a NERA sentence is within the statutory limits prescribed for the crime. Nevertheless, we are satisfied that the kind of hearing held here, which we believe to have been beyond the legislative contemplationa hearing at which witnesses testified respecting elements of a crime and the judge's decision was based on a preponderance of the evidenceso clearly erodes the constitutional guarantees of trial by jury and due process of law as to be constitutionally untenable.
We begin our analysis with a consideration of the Graves Act, N.J.S.A. 2C:43-6c, *133 the first of our mandatory parole ineligibility statutes and the evident model for NERA. The Graves Act requires imposition of a mandatory parole ineligibility term upon conviction of possession of a firearm with intent to use it against the person of another, N.J.S.A. 2C:39-4a, or of a specified crime during whose commission or attempted commission or immediate flight therefrom the defendant used or was in possession of a firearm. The statute, N.J.S.A. 2C:43-6d, requires that the ground for imposition of a Graves Act sentence must be established by a preponderance of the evidence at a pre-sentencing hearing. The evidential basis for proof of the asserted ground is also specified by section d., which provides that the court, in making its finding, "shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing, or other court proceedings and shall also consider the presentence report and any other relevant information."
In its first consideration of the nature of the required presentence hearing, in State v. Stewart, 96 N.J. 596, 477 A.2d 300 (1984), the Supreme Court rejected a narrow interpretation of its scope. There, the defendant had been acquitted of charges of conspiracy to commit robbery, armed robbery, and weapons possession charges, but convicted of second-degree unarmed robbery. Defendant argued first that all the judge is permitted to do at the hearing is to determine whether a weapon in issue is a firearm and, further, that having been acquitted of armed robbery and the weapons charges, it was fundamentally unfair to permit the judge to find that he was nevertheless in possession of a firearm while committing or fleeing from an unarmed robbery. The Court premised its disagreement with these arguments on what we regard to be the critical distinction between the Graves Act and NERA. As Chief Justice Wilentz so cogently pointed out, "[t]he Legislature, in enacting the Graves Act, included in the list of offenses to which the Act applies some crimes for which possession or use of a firearm is not always a necessary element to be proved ..." id. at 605, 477 A.2d 300, referring, illustratively, to murder, manslaughter, aggravated assault, sexual assault, aggravated criminal sexual conduct, robbery and burglary. Thus, he continued, "[i]n prosecutions for these crimes the jury will not necessarily consider the issue of firearm possession or use. We therefore interpret this section as requiring the sentencing court to determine whether defendant used or possessed a weapon as well as whether that weapon is a firearm...." Id. at 605-606, 477 A.2d 300. The defendant there, consequently, could have committed a Graves Act offense had he committed an unarmed robbery but while possessing a firearm not actually used in the robbery. The point, of course, is that the danger perceived and addressed by the Legislature in enacting the Graves Act was not only the use of firearm in the commission of a crime but also its immediate availability to the defendant and hence the risk of its potential use in committing the crime.
The structure of NERA is very different. Unlike the Graves Act, it does not address the circumstances surrounding the commission of a crime, i.e., firearm possession or use, but, rather, particularly well-defined, well-understood and statutorily defined elements of a crime. Thus, as section d. defines it, a NERA crime is one in which the actor (1) causes death, or (2) or causes serious bodily injury as defined by N.J.S.A. 2C:11-1b, or (3) uses or threatens the immediate use of a deadly weapon, or (4) uses or threatens the immediate use of physical force in committing an aggravated sexual assault or sexual assault. "Deadly weapon" for NERA purposes is also defined to mean "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury." To that extent, the NERA definition tracks the definition of "deadly *134 weapon" of N.J.S.A. 2C:11-1c, but omits its final clause which also includes as a deadly weapon an object "which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury," a distinction we find to be critical as we hereafter explain.
It is immediately apparent that each of these NERA conditions is a customary first- or second-degree crime element. Causing death is, of course, an essential element of the criminal homicide crimes defined by N.J.S.A. 2C:11-3 (murder), N.J.S.A. 2C:11-4 (manslaughter), and N.J.S.A. 2C:11-5 (vehicular homicide). Serious bodily injury is, illustratively, an essential statutory element of N.J.S.A. 2C:12-1b (aggravated assault), and N.J.S.A. 2C:15-1b (first-degree robbery). Use or immediately threatened use of a deadly weapon is, illustratively, an essential statutory element of N.J.S.A. 2C:12-1b(2) (aggravated assault) and N.J.S.A. 2C:15-1b (first-degree robbery). And use or threat of immediate use of physical force is an element of aggravated sexual assault as defined by N.J.S.A. 2C:14-2a(6) and of sexual assault as defined by N.J.S.A. 2C:14-2c(1).
Our point then is self-evident. Because firearm use or possession is not a necessary element of many crimes in which a firearm is actually used or possessed, the generic "weapon" or "deadly weapon" being the customary stipulated element, the prosecutor is unable to seek Graves Act sentencing by discrete and careful framing of the charges to be presented to the grand jury. That is ordinarily not so with NERA offenses. In the case of NERA offenses, there is already a statutory crime to fit the punishment intended by NERA. That is to say, if a predicate fact of NERA sentencing exists, it will also inevitably constitute or be encompassed by an element of a crime with whose commission defendant may be charged. By the same token, it would appear that if the crime of which defendant is charged and convicted does not include an element constituting or encompassing a NERA predicate fact, that crime, by definition, is not a violent crime within NERA's intendment. Thus if defendant is convicted of a crime one of whose necessary and constituent elements is a congruent NERA predicate fact, such as ensuing death or serious bodily injury, a post-verdict, presentencing hearing would not ordinarily alter the NERA imperatives of a return of such a verdict.
There are, however, those convictions in which the existence of a NERA predicate fact cannot be conclusively determined on the basis of the elements of the crime of which defendant is convicted. For example, an aggravated sexual assault may be committed if the actor is not only armed with an actual deadly weapon but also if he "is armed with a weapon or any object fashioned in such a manner as to lead the victim to reasonably believe it to be a weapon and threatens by word or gesture to use the weapon or object." N.J.S.A. 2C:14-2a(4). A weapon in that context has a broader and more encompassing meaning than a deadly weapon as defined by NERA since, as we have noted, the NERA definition only includes actual weapons and not an object that is not a weapon but is reasonably believed by the victim to be a weapon. The same is true of the "deadly weapon" element of aggravated assault and first-degree robbery since it incorporates the "deadly weapon" definition of N.J.S.A. 2C:11-1c, which also includes an object fashioned to look like but is not actually a weapon. We further point out that while "bodily injury" and "serious bodily injury," as defined by N.J.S.A. 2C:11-1b and N.J.S.A. 2C:14-2a, run through the criminal statutes, nevertheless N.J.S.A. 2C:14-2a predicates first-degree sexual assault on both the use of physical force and the victim's resulting "severe personal injury," which may not necessarily amount to "serious bodily injury." See N.J.S.A. 2C:14-1f, defining "severe personal injury" more broadly than "serious bodily injury" and as including *135 disease, incapacitating mental anguish and chronic pain. See also State v. Walker, 216 N.J.Super. 39, 522 A.2d 1021 (App. Div.), certif. denied, 108 N.J. 179, 528 A.2d 10 (1987). NERA, however, includes only serious bodily injury and not severe personal injury. And see State v. Thomas, 322 N.J.Super. 512, 515, 731 A.2d 532 (App.Div.), certif. granted, 162 N.J. 489, 744 A.2d 1211 (1999).
Where there is an ambiguity and hence the possibility that the element of a particular crime of which defendant has been convicted is not congruent with its counterpart NERA predicate fact, a hearing as contemplated by section e. is clearly in order. Ordinarily, it will be a hearing whose purpose, in accordance with apparent statutory intent, is to determine whether the apparent NERA element of the crime of which defendant has been convicted is, in fact, also a NERA predicate. Illustratively, a defendant may be convicted of first-degree armed robbery, N.J.S.A. 2C:15-1b, by reason of use in its commission of a fake or toy gun. See generally State v. Gantt, 101 N.J. 573, 503 A.2d 849 (1986). Such a weapon does not, however, meet NERA's deadly weapon definition. Thus, in that case, the purpose of the NERA hearing, if the question is in dispute, would simply be to determine the true nature of the weapon, an issue on which the State bears the burden of proof by a preponderance of the evidence. See also State v. Grawe, 327 N.J.Super. 579, 744 A.2d 246 (App.Div.), certif. denied, 164 N.J. 560, 753 A.2d 1152 (2000) (hand-held hammer used as a burglar's tool rather than as a weapon was not a deadly weapon within NERA's definition); State v. Pierre, 329 N.J.Super. 588, 748 A.2d 654 (Law Div.1999), aff'd o.b., 330 N.J.Super. 7, 748 A.2d 1129 (App.Div.2000) (folding knife in closed position and wrapped to simulate a gun was not a NERA deadly weapon).
We are further convinced that the evidential basis of a NERA hearing, not specified by NERA itself, is exactly the same as that mandated by N.J.S.A. 2C:43-6d for a Graves Act hearing, that is, evidence ordinarily already of record in some form and of which the judge may take judicial notice as well as the presentence report and "other relevant information." We do not believe, however, that the phrase "other relevant information," whatever else it may encompass for purposes of matching an element of the crime of which defendant was convicted with a NERA predicate fact, can have contemplated the testimony of the victim, particularly one who has not testified at trial, respecting a basic element of a crime of which defendant has not been convicted. Cf. State v. Wooters, 228 N.J.Super. 171, 179-180, 549 A.2d 441 (App.Div.1988). And for the reasons we state hereafter, we are also satisfied that "relevant information" could not constitutionally embrace, as happened in this case, the taking of new proofs respecting an element of a crime if that crime was not either before the jury or encompassed by the plea proceeding.
That observation brings us directly to a consideration of what NERA intended the presentence hearing to be and what the constitutional constraints on that hearing are in those cases in which the elements of the crime of which defendant is convicted do not include a NERA fact-predicate counterpart.
By way of analytical framework, it need hardly be said that the bedrock constitutional protections"protections of surpassing importance"that the Sixth and Fourteenth Amendments guarantee to criminal defendants are the right to trial by jury and the requirement that the jury find each of the elements of the crime to have been proved beyond a reasonable doubt. Apprendi, supra, 530 U.S. at ___, 120 S.Ct. at 2355-2356, 147 L.Ed.2d at 447. And see In the Matter of Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970), making clear that the reasonable-doubt standard of proof is a matter of Fourteenth Amendment constitutional imperative. We understand the distinction drawn by the Supreme Court *136 between elements of the crime, which must be found by a jury beyond a reasonable doubt, and sentencing factors, which the judge may determine by a preponderance of the evidence. See McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (upholding Pennsylvania's version of the Graves Act as involving sentencing rather than elemental factors). The issue, of course, is the latitude afforded by the Constitution to the states to designate a fact critical to the extent of punishment as a sentencing factor rather than as an element of the crime.
Apprendi leaves no doubt of the proposition that if that critical fact permits imposition of a sentence exceeding the statutory maximum for the crime of which defendant is convicted, it must be regarded as elemental and therefore mandatorily subject to jury determination pursuant to the reasonable-doubt standard. But it also makes clear that such sentence enhancement is not exhaustive of the inquiry. Thus, quoting Almendarez-Torres v. United States, 523 U.S. 224, 251, 118 S.Ct. 1219, 1234, 140 L.Ed.2d 350, 373 (1998) (Scalia, J., dissenting), and citing Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Court pointed out that "[s]ince Winship, we have made clear beyond peradventure that Winship's due process and associated jury protections extend, to some degree, `to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence.'" Apprendi, supra, 530 U.S. at ___, 120 S.Ct. at 2359, 147 L.Ed.2d at 451. And McMillan notwithstanding, the Court also steadfastly adhered to its "position that (1) constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense ... and (2) that a state scheme that keeps from the jury facts that `expos[e] [defendants] to greater or additional punishment' ... may raise serious constitutional concern." Apprendi, 530 U.S. at ___, 120 S.Ct. at 2360, 147 L.Ed.2d at 452 (quoting and paraphrasing McMillan, supra, 477 U.S. at 85-88, 106 S.Ct. at 2415-2417, 91 L.Ed.2d at 75-78). See also Jones v. United States, 526 U.S. 227, 248, 119 S.Ct. 1215, 1226, 143 L.Ed.2d 311, 329 (1999) (warning against incremental "diminishment of the jury's significance.")
We are satisfied that a construction of NERA that would permit the judge to impose an eighty-five percent parole ineligibility period by finding, by a preponderance of the evidence,[1] a NERA predicate fact having no elemental counterpart in the crime of which defendant was convicted transcends the constitutional limit on the state's "authority to define away facts necessary to constitute a criminal offense." It is true that a NERA sentence imposes no greater punishment than the Criminal Code permits for that crime. But just as surely, it imposes additional punishment by substantially increasing the time defendant will have to spend in custody. Obviously the basic sentencing issue is always the real time defendant must serve, and we have always recognized that real time is the realistic and practical measure of the punishment imposed. See, e.g., State v. Pennington, 154 N.J. 344, 357, 712 A.2d 1133 (1998); State v. Long, 119 N.J. 439, 459, 575 A.2d 435 (1990); State v. Louis, 117 N.J. 250, 257, 566 A.2d 511 (1989); Richardson v. Nickolopoulos, 110 N.J. 241, *137 246, 540 A.2d 1246 (1988); State v. Mastapeter, 290 N.J.Super. 56, 60, 674 A.2d 1016 (App.Div.), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996); State v. Richardson, 208 N.J.Super. 399, 413-414, 506 A.2d 43 (App. Div.), certif. denied, 105 N.J. 552, 523 A.2d 188 (1986). Indeed our rules of criminal practice require the judge at the time of sentencing to state the real time probable as the result of the sentence imposed, including not only defendant's primary eligibility date but also the impact of credits against the sentence. R. 3:21-4(j). In terms of real time, there is a vast difference between having to serve eighty-five percent of the sentence imposed and having to serve substantially less than a third if no parole ineligibility period is imposed, N.J.S.A. 30:4-123.51, or even between a third and a half if any other usual parole ineligibility period is imposed.[2]
We recognize, nevertheless, particularly in view of McMillan, that the severe parole ineligibility consequence of a NERA sentence is not by itself enough to trigger the constitutional protections of the Sixth and Fourteenth Amendments. What does, however, in our view trigger them is the fact of that severity when coupled with the nature of the evidence and standard of proof thereof that would permit that consequence. In short, each of the NERA predicate facts is, as we have pointed out, chargeable under our criminal statutes as an element of a crime. As such, they are, beyond reasonable debate, uniformly viewed as facts that our criminal jurisprudence traditionally, customarily, and constitutionally requires the jury to determine under a reasonable-doubt standard. They cannot therefore, as we perceive the issue, be stripped of that status and relegated to judicial fact-finding subject to a preponderance standard based on evidence that a jury should hear and evaluate and is normally expected and required to hear and evaluate. If we were to permit that, we would be essentially permitting the State to define away elements of the crime simply by relegating them to the status of sentencing factors and thereby relieving itself of its fundamental obligation of satisfying a jury by proof beyond a reasonable doubt based on admissible and, competent evidence of each of the elements of the charged crime. And that would be a constitutional violation simply because defendant's punishment would then be based on an element of a crime of which he was not convicted by a jury, which the prosecutor did not have to prove beyond a reasonable doubt, and against which defendant had no opportunity to defend himself before a jury.
We are satisfied that this case perfectly illustrates our constitutional concerns. Defendant pleaded guilty to that first-degree aggravated sexual assault whose gravamen was only the age of the victim. At the sentencing hearing conducted under section e. of NERA, the victim testified briefly as to the use of force in that assault, an element of a different sexual assault crime from the crime to which defendant had pleaded, the prosecutor having agreed to dismiss the use-of-force count. Her testimony carried penal consequences. It is contrary to our fundamental view of trial by jury and all that that right implies for that testimony to have been heard and evaluated only by a judge under a preponderance standard rather than having the essential credibility issues tested before a jury under the rules of evidence.
We are convinced that the Legislature never intended what we regard as so bizarre and draconian a proceeding. In short, as we have explained, we take the view that the hearing required by section e. was primarily predicated on the understanding that the NERA predicate fact and the counterpart element of crime are not necessarily congruent. Where that is so, the Legislature reposes in the trial judge the obligation to determine by a preponderance of the evidence, primarily *138 the trial record, whether the NERA fact exists.
For these reasons, we conclude that an absolute prerequisite to NERA sentencing is defendant's conviction, either by a jury or by a guilty plea, of a crime one of whose elements is a counterpart to or inclusive of a NERA predicate fact. That element cannot be initially supplied after conviction by proofs submitted to the judge for preponderance-of-the-evidence fact-finding in a post-conviction hearing. And if defendant pleads guilty, the plea must also be to such a crime. This defendant did not plead guilty to sexual assault involving either a deadly weapon or the use of physical force resulting in physical injury. A NERA sentence could not, therefore, have been imposed.[3]
We remand to the trial court for resentencing without reference to NERA.[4] In all other respects the judgment of conviction is affirmed.
NOTES
[1] It would appear, although NERA itself is silent on the subject, that the Graves Act counterpart hearing provision stipulating a preponderance of the evidence standard for the presentencing hearing would also apply to NERA hearings under subsection e. The Law Division has so held. State v. Pierre, 329 N.J.Super. 588, 748 A.2d 654 (Law Div.1999), aff'd o.b. 330 N.J.Super. 7, 748 A.2d 1129 (App.Div.2000). We are aware that another Law Division judge concluded that the reasonable-doubt standard applies to the NERA hearing, a conclusion reached on the somewhat anomalous basis that the hearing involves determination of an element of the crime. See State v. Ainis, 317 N.J.Super. 127, 136-137, 721 A.2d 329 (Law Div.1998). We agree with State v. Pierre. In our view, categorization of an issue as an element of the offense and application of the reasonable doubt standard are virtually conclusive indicia of the right to a jury trial on the issue.
[2] We except, of course, the special mandatory parole ineligibility periods for designated first-degree crimes, including murder. N.J.S.A. 2C:11-3b.
[3] Our vacation of the NERA sentence renders defendant's second point moot. We are, in any case, satisfied that he was on adequate notice at the time he entered his plea that the State would seek a NERA sentence.
[4] We note that the use of physical force in the commission of a sexual assault renders it a second-degree crime pursuant to N.J.S.A. 2C:14-2c(1) if, as here, the victim did not sustain severe personal injury, N.J.S.A. 2C:14-2a(6), nor was the actor aided or abetted by another. N.J.S.A. 2C:14-2a(5). Consequently, the first-degree aggravated sexual assault charges against defendant did not include a physical force element, and the physical force second-degree count was dismissed as part of the plea agreement. In our view, in order for a NERA sentence to have been imposed on this indictment, defendant would have had to have been convicted of that second-degree charge. We do not address the question, because it is not here raised, as to whether, if defendant had been convicted of both the first-degree aggravated sexual assault based only on the victim's age and the second-degree physical-force sexual assault, he could then have been sentenced to a NERA sentence on the first-degree conviction, with which the second-degree conviction would have merged. We do, however, hold that in this case a jury determination of physical force was necessary before any NERA sentence could have been imposed.