762 A.2d 677 (2000)
335 N.J. Super. 391
STATE of New Jersey, Plaintiff-Respondent,
v.
Patrick KANE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 2000.
Decided November 30, 2000.
*678 Marcia Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joel M. Harris, Public Defender, attorney; Ms. Blum, of counsel and on the brief).
Debra A. Owens, Deputy Attorney General, argued the cause for respondent (John J. Farmer, Jr., Attorney General, attorney; Ms. Owens, of counsel and on the brief).
Before Judges BAIME and CARCHMAN.
The opinion of the court was delivered by BAIME, P.J.A.D.
Defendant pled guilty to second degree aggravated assault (N.J.S.A. 2C:12-1b(1)). Following a hearing, the Law Division found that the victim sustained serious bodily injury and, thus, the No Early Release Act (NERA) was applicable. Defendant was sentenced to six years imprisonment, eighty-five percent of which is to be served without parole eligibility.
On appeal, defendant argues: (1) his plea of guilty was not voluntary and was not supported by an adequate factual basis, (2) the victim did not suffer serious bodily injury, and (3) the Law Division failed to apply the "proof beyond a reasonable doubt" standard in determining whether the statutory requisites were met. We are satisfied that defendant's plea of guilty was properly entered. We, nevertheless, vacate the sentence imposed.

I.
Defendant had two children with Nicole Gigliotti. At some point, however, their relationship soured. A domestic violence order was entered barring defendant from having any contact with Nicole. On October 3, 1997, defendant visited his two children at Nicole's residence. Nicole was not *679 present. The two children were being supervised by Pasquale Rissi and Elissa Gigliotti, Nicole's sister.
Defendant became embroiled in an argument with Rissi. When Elissa attempted to intervene, defendant struck her in the face. The nature and extent of defendant's attack is in dispute. In any event, the police arrived and transported Elissa to the hospital. A CAT scan and a series of x-rays disclosed no fracture or other abnormality. Elissa received six stitches over her left eye and was released the same day.
Approximately one month later, Elissa's family doctor referred her to a radiologist. The x-ray report stated:
Nasal Bones: There is a transverse fracture of the mid portion of the nasal bones with slight depression of the distal fragment. There also may be a longitudinal fracture present. The inferior nasal spine is intact. The maxillary sinuses are clear.
Conclusion: Transverse and longitudinal nasal fractures.
The record is silent respecting whether Elissa received any treatment for the fracture.
Defendant pled guilty to aggravated assault. In response to questioning, he admitted that he "attempted to cause [Elissa] serious bodily injury or hurt...." Defendant also conceded that Elissa sustained a nasal fracture. The prosecutor and defense counsel agreed that a hearing was necessary to determine whether defendant was subject to NERA.
At the hearing, the prosecutor solely relied on the x-rays taken one month after the date of the crime in arguing that Elissa had sustained serious bodily injury. No other evidence was presented on the subject. The judge determined that the victim had suffered a protracted loss or impairment of a bodily organ. Defendant was thus sentenced under NERA's harsh parole ineligibility prescription.

II.
We first address defendant's argument that his plea of guilty was not voluntary and was not supported by an adequate factual basis. We reject this contention.
We are satisfied that the plea was made voluntarily and intelligently with an understanding of the nature of the charge and the consequences of a conviction. State v. Sainz, 107 N.J. 283, 293, 526 A.2d 1015 (1987); State v. Taylor, 80 N.J. 353, 361-62, 403 A.2d 889 (1979); see also R. 3:9-2. While the judge's inquiry concerning defendant's understanding of the crime charged was somewhat perfunctory, the questions asked and answers given were sufficient. Defendant was represented by counsel throughout the proceedings. He acknowledged that he had signed the plea forms after having read and reviewed them with his attorney. Defendant stated unequivocally that he understood the charges and that he had no questions. He indicated that he was satisfied with the advice and services of his lawyer. His statement concerning the factual basis for the plea, although brief, disclosed that he understood the elements of the offense and that he was guilty. This case suffers from none of the infirmities that we have found in other instances in which we felt compelled to vacate guilty pleas. See, e.g., State v. Rhein, 117 N.J.Super. 112, 115-17, 283 A.2d 759 (App.Div.1971); State v. Leckis, 79 N.J.Super. 479, 486, 192 A.2d 161 (App.Div.1963); see also State v. Reali, 26 N.J. 222, 224, 139 A.2d 300 (1958).
We also conclude that the plea was supported by an adequate factual basis. Defendant candidly admitted that he intended to cause serious bodily injury when he struck the victim. This statement can best be understood in the light of all the surrounding circumstances. Although we are somewhat troubled by the fact that defendant furnished the factual basis as a result of leading questions, we recognize that he was admitting the distasteful reality *680 that made his conduct criminal. State v. Smullen, 118 N.J. 408, 415, 571 A.2d 1305 (1990). "It is not the kind of thing that people like to admit." Ibid. Nevertheless, defendant was not reluctant in admitting that he attempted to cause "serious bodily injury or hurt." He did not hesitate in responding to the questions propounded. The essential thing is that the evidence before the judge, including defendant's statement, inexorably supported the conclusion that defendant was guilty of second degree aggravated assault. State v. Sainz, 107 N.J. at 292, 526 A.2d 1015.

III.
We next consider defendant's claim that the evidence did not support the judge's finding concerning the severity of the injuries suffered by the victim. In approaching this issue, we recognize the narrow scope of our review of the judge's factual findings. We must examine the record in light of the contentions advanced, but not initially from the point of view of how we would decide the matter if we were the court of first instance. State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964). Our aim is to determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record. Id. at 162, 199 A.2d 809; see also State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999); Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475, 541 A.2d 1063 (1988). So viewed, we are satisfied that the judge's finding was clearly a mistaken one and was so plainly unwarranted that the interests of justice demand intervention and correction.
Although we are reviewing a factual finding, the focus of our inquiry really pertains to a mixed question of law and fact. That is particularly important because we are dealing with a penal statute, which must be strictly construed. State v. Edwards, 28 N.J. 292, 298, 146 A.2d 209 (1958). That rule of statutory construction has greater efficacy here because the Legislature was not silent with respect to its view of the reach of the law. As originally introduced, NERA applied to any "crime of violence." The Governor's Study Commission on Parole recommended, and the Assembly by amendment agreed, that the term crime of violence, "should be drawn narrowly to reflect the most dangerous criminal conduct." Report of the Study Commission on Parole, December 1996, p. 13; see also State v. Burford, 163 N.J. 16, 19, 746 A.2d 998 (2000).
The operative statutory language can be found in N.J.S.A. 2C:43-7.2a which provides:
A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.
N.J.S.A. 2C:43-7.2d states in pertinent part:
For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S.A. 2C:11-1, or uses or threatens the immediate use of a deadly weapon.
Nothing suggests that defendant used or threatened the immediate use of a deadly weapon. The only issue is whether he caused "serious bodily injury," which is defined by N.J.S.A. 2C:11-1b as "bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." "Serious bodily injury" is to be distinguished from "significant bodily injury," which is defined by N.J.S.A. 2C:11-1d as "bodily injury which creates a temporary loss of the function of any bodily member or organ or *681 temporary loss of any one of the five senses."
Within this analytical framework, it is important to note that defendant did not admit at the time of his plea that "serious bodily injury" ensued as a result of his attack on the victim.[1] He instead acknowledged that he "attempt[ed] to cause serious bodily injury." This is significant because the statute clearly and unambiguously applies only to violent crimes in which the actor causes death or serious bodily injury, or uses or threatens the use of a deadly weapon. A mere attempt to cause serious bodily injury, without more, does not subject a first degree or second degree offender to NERA. State v. Staten, 327 N.J.Super. 349, 355, 743 A.2d 365 (App.Div.2000).
Assuming the later x-rays were accurate and the earlier ones inaccurate in depicting the victim's injuries, we must decide whether a broken nose constitutes "serious bodily injury." At least to some extent, the seriousness of the injury is in the eyes of the beholder. Some individuals are especially resolute in the face of injury and others are not. Athletes, for example, often continue to compete despite injuries others might find debilitating. We do not assert that the seriousness of an injury is to be measured by its debilitating impact upon a person of uncommon courage or tenacity. But evidence should be presented concerning how the injury affected the victim's daily life and normal activities. Moreover, the nature and extent of the fracture may determine whether the injury results in "serious disfigurement" or "protracted loss or impairment of the function of [a] bodily member or organ." N.J.S.A. 2C:11-1b. Whatever else may be said, we are convinced that a medical diagnosis of a broken nose does not necessarily qualify the harm committed as "serious bodily injury" under NERA.
The record is silent respecting whether the victim suffered a "loss or impairment" of a bodily function. But even assuming that such injury was established, the transcript is barren of evidence indicating that the victim's condition was protracted, prolonged or extended in time. Whatever the standard of proof, whether by a preponderance of the evidence, by clear and convincing evidence, or by proof beyond a reasonable doubt, the prosecutor utterly failed to establish the statutory requirement of "serious bodily injury."
We do not suggest that the injuries suffered by Elissa were inconsequential. But, we are bound by the record before us. The record is not susceptible to a construction that Elissa suffered "intense pain" over a prolonged period or that she was permanently scarred, State v. Villar, 150 N.J. 503, 508, 696 A.2d 674 (1997), or that she "lost an arm or an eye," State v. Sloane, 111 N.J. 293, 299, 544 A.2d 826 (1988), or that she had to undergo extensive and expensive treatment, State v. Staten, 327 N.J.Super. at 353, 743 A.2d 365. All we know is that she suffered a broken nose. That is not enough.
We thus discern clear error in the trial judge's conclusion that NERA's requirements were satisfied. Because of this disposition, we need not address the remaining issues. We instead reverse the sentence imposed and remand for resentencing.
Reversed and remanded.
NOTES
[1] While this appeal was pending, another panel of this court rendered its decision in State v. Mosley, 335 N.J.Super. 144, 761 A.2d 130 (App.Div.2000). Writing for the court, Judge Pressler concluded that where the "NERA predicate fact and the counterpart element of the crime are not necessarily congruent," the trial judge must "determine by a preponderance of the evidence, primarily from the trial record, whether the NERA fact exists." Id. at 159, 761 A.2d 130. In light of our disposition of the principal question presented, we have no occasion to determine what impact Mosley might otherwise have had on this case.