765 A.2d 283 (2001)
336 N.J. Super. 514
STATE of New Jersey, Plaintiff-Respondent,
v.
Lavar GRIFFITH, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 31, 2000.
Decided February 1, 2001.
Ivelisse Torres, Public Defender, for appellant (Jacqueline E. Turner, Newark, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, for respondent (Craig V. Zwillman, Deputy Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, CONLEY and LESEMANN.
*284 The opinion of the court was delivered by LESEMANN, J.A.D.
This is another in what seems to be a steady stream of cases interpreting and applying the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, which requires that one convicted of a first or second degree "violent crime" is ineligible for parole release until he or she has served eighty-five percent of the sentence imposed for that crime. See, e.g., State v. Burford, 163 N.J. 16, 746 A.2d 998 (2000); State v. Austin, 335 N.J.Super. 486, 762 A.2d 1052 (App.Div.2000); State v. Mosley, 335 N.J.Super. 144, 761 A.2d 130 (App.Div. 2000); State v. Thomas, 322 N.J.Super. 512, 731 A.2d 532 (App.Div.1999). The case bears some similarity to Burford, where the Court held NERA inapplicable to one driving recklessly while attempting to elude the police. However, the facts here are significantly different. Defendant used his automobile intentionally, as a battering ram to try to move a police vehicle which had blocked him in to effect his arrest. Under those circumstances we are satisfied that, unlike Burford, the defendant was using his vehicle as a "deadly weapon." Thus, we agree with the trial court's conclusion that NERA applies, and accordingly, we affirm.
The case arose when two Newark police officers received a report of a stolen vehicle being driven from South Orange into Newark. Shortly thereafter, the officers saw a vehicle meeting the description of the stolen car, driven by a man subsequently identified as defendant. The police approached the vehicle, pulled across the road in front of it, and thus blocked its continued passage in the direction it had been moving. Defendant's vehicle then reversed and proceeded backwards at a high speed for several hundred feet before it turned right and headed away from the officers. The police pursued the vehicle which soon struck a tree. The police officers, in their vehicle, then approached the defendant's automobile and, as one of the officers described it, they pinned defendant against the tree, with the idea of preventing him from moving away. Defendant, however, proceeded to move his car rapidly, first into reverse and then into forward gear, striking the police vehicle, with the officers in it, in an attempt to move it out of the way so he could make his escape. Defendant continued those movements several times "trying to ram his way out of the block," but was unable to move the police car. Eventually, when defendant was no longer able to move his vehicle, some of the officers who had by then gotten out of their vehicles, were able to seize defendant and place him under arrest.
Defendant was indicted on eight counts, which included receiving stolen property, in violation of N.J.S.A. 2C:20-7 and a charge of second degree eluding of the police, in violation of N.J.S.A. 2C:29-2b. Thereafter, he pleaded guilty to those counts under a plea agreement by which the other counts against him were dismissed, and defendant was to be sentenced to not more than five years in prison. The plea agreement also provided that at sentencing, the court would hold a hearing to determine whether NERA applied to the second degree eluding offense. Defendant was advised that if NERA did apply, he would be required to serve eighty-five percent of his sentence before being eligible for parole.
At the hearing held by the trial court, the facts emerged essentially as set out above. The court concluded that NERA applied, defendant was sentenced accordingly, and he now appeals that sentence, alleging that the court erred in its NERA conclusion.
Application of NERA depends upon a finding that a defendant committed a first or second degree offense which is a "violent crime." N.J.S.A. 2C:43-7.2a. The term "violent crime" is defined in subsection d of N.J.S.A. 2C:43-7.2 to include, inter alia, "any crime in which the actor *285 ... uses ... a deadly weapon." The term "deadly weapon" is, in turn, defined in a second paragraph of subsection d as,
Any firearm or other weapon, device, instrument, material or substance, ... which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.
Since defendant here was charged with second degree eluding of the police, the initial requirement of NERAthat the crime be one of the first or second degreeis obviously satisfied. The significant issue is whether the other qualifying NERA elementthat the offense be a "violent crime"has also been satisfied. The State claims it has because, in his attempt to elude the police, defendant used "a deadly weapon." The deadly weapon, of course, is said to be the automobile which defendant employed as a battering ram.
In State v. Burford, supra, 163 N.J. at 18, 746 A.2d 998, the Court noted that "deadly weapons" clearly include firearms and other "objects that, by their nature, have no apparent use or purpose other than the infliction of death or serious bodily harm." However, said the Court, the term may also include "a class of objects `having a wide variety of lawful uses but... which may take on the character of a deadly weapon' depending on the circumstances." Ibid., quoting from the Appellate Division decision in State v. Burford, 321 N.J.Super. 360, 729 A.2d 52, which in turn quoted from State v. Riley, 306 N.J.Super. 141, 147, 703 A.2d 347 (App. Div.1997). In dealing with that second "class of objects as deadly weapons," said the Court, the question of whether the object was used as a deadly weapon is "in every case, entirely circumstantialthat is, did a particular defendant possess a particular object at a particular time and in a particular situation with the intention of using it as a weapon." Ibid. In the case before it, the Court concluded that, although the defendant had driven his vehicle recklessly, he "did not possess the automobile with the intent to use it as a weapon ...", and thus he did not qualify for a NERA sentence. However, the Court added,
On the other hand, an automobile can be used as a deadly weapon under certain circumstances; the most obvious example being where it is driven directly at a law enforcement officer who is positioned to stop the vehicle. Thus, there may be circumstances where an automobile can be used as a deadly weapon.
[Id. at 19, 746 A.2d 998.]
As noted, the facts here are critically different from those in Burford. Indeed, defendant's conduct falls squarely within the description in the Court's final comments in Burford, noting that there are cases when an automobile can be used as a deadly weapon, "the most obvious example being where it is driven directly at a law enforcement officer who is positioned to stop the vehicle." Ibid. That is precisely what happened here. Defendant did not simply drive recklessly, as in Burford. Rather, the trial court found, and it is patently clear, that the defendant intentionally drove directly at the police vehicle, with the officers in it, in an unsuccessful attempt to ram the vehicle out of his path so he could make his escape. Certainly, used in that manner, defendant's automobile constituted a "device [or] instrument... which in the manner it [was] used ... [was] known to be capable of producing death or serious bodily injury." N.J.S.A. 2C:43-7.2d. The conduct falls squarely within the definition of a "violent crime" as defined in N.J.S.A. 2C:43-7.2, because defendant was using a "deadly weapon" as that term is defined within the statute.[1]
*286 Finally, we are satisfied that the procedure followed by the trial court here complied with the requirements set out in Burford and also those outlined in this court's recent decision in State v. Mosley, supra. We also note that the substantive offense here included a necessary finding that defendant had created "a risk of death or injury" to others.[2] Thus, the employment of NERA is consistent with the requirement set out in Mosley, that defendant be convicted "either by a jury or by a guilty plea, of a crime one of whose elements is a counterpart to or inclusive of a NERA predicate fact." 335 N.J.Super. at 159, 761 A.2d 130. The plea was to a crime which involved a counterpart to a "NERA predicate fact" an action which created "a risk of death or injury." While the definition of the substantive offense itself did not necessarily implicate NERA, the subsequent hearing held by the trial court established NERA's applicability by demonstrating defendant's utilization of the requisite "deadly weapon." Ibid.
Affirmed.
NOTES
[1] We note that the trial court found the facts essentially as they are outlined above, but concluded that defendant had employed his vehicle for the purpose of damaging the police vehicle or injuring the police officers themselves. We find no basis for that conclusion as to defendant's intent, since it seems more likely that defendant had no particular intention to damage the vehicle or injure officers but was using his vehicle as a battering ram to move the police vehicle and make his escape. Under either hypothesis, however, with the police officers in the vehicle, we are satisfied that NERA applies.
[2] One is guilty of second degree eluding if he or she "flees or attempts to elude any police or law enforcement [and] ... if the flight or attempt to elude creates a risk of death or injury to any person." N.J.S.A. 2C:29-2b.